PEOPLE v BERO

Docket No. 93580. Submitted November 5, 1987, at Lansing. Decided February 29, 1988.

Paul D. Bero was convicted of two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct, Bay Circuit Court, Eugene C. Penzien, J. Prior to defendant's being charged, defendant's house was searched pursuant to a federal search warrant, and defendant pled guilty to a federal morals charge. The state authorities obtained the evidence seized in the search and the state charges followed. Defendant appealed, alleging that he was denied a fair trial because of a long-standing conflict between his counsel and the judge, that he did not have the effective assistance of counsel, that his prosecution violated the prohibition against double jeopardy, and that his sentence constituted cruel and unusual punishment or an abuse of discretion.

The Court of Appeals *held:*

1. An order denying a party's motion for disqualification will be reversed only where the court abused its discretion. An order denying a party's motion for disqualification of the judge is to be reviewed by the chief judge of the court and decided by de novo review of the record. The Court of Appeals reviewed Chief Judge William Caprathe's review of defendant's motions for disqualification and Judge Penzien's decision and found no abuse of discretion. The filing with the Judicial Tenure Commission of a party's or attorney's grievance against a judge is not sufficient to require automatic disqualification of that judge.

2. Defendant was not denied effective assistance of counsel by the failure to present an insanity defense or by the failure to get defendant's prior statements suppressed. Defendant's grant of federal immunity extended only to further federal prosecutions and the circumstances did not call for *Miranda* warnings.

3. The federal and state prosecutions together did not violate

REFERENCES

Am Jur 2d, Criminal Law §§ 244, 481-485, 588-594, 752, 984-987.

Am Jur 2d, Judges §§ 13 *et seq.,* 86-236.

Disqualification of judge for bias against counsel for litigant. 23 ALR3d 1416.

the prohibition against double jeopardy since they did not arise out of the same criminal act.

4. Defendant's sentence did not constitute cruel and unusual punishment or shock the judicial conscience.

Affirmed.

1. JUDGES — DISQUALIFICATION OF JUDGES — COURT RULES — APPEAL.

A judge should be disqualified when he cannot impartially hear a case because he is personally biased or prejudiced against a party or attorney; an order denying a party's motion for disqualification will be reversed only where the court abused its discretion (MCR 2.003[B][2]).

2. JUDGES — DISQUALIFICATION OF JUDGES — JUDICIAL TENURE COMMISSION.

The filing with the Judicial Tenure Commission of a party's or attorney's grievance against a judge is not sufficient to require automatic disqualification of that judge.

3. JUDGES — DISQUALIFICATION OF JUDGES — COURT RULES — APPEAL.

An order denying a party's motion for disqualification of the judge is to be reviewed by the chief judge of the court and decided by de novo review of the record (MCR 2.003[C][3][a]).

4. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law, and, secondly, counsel must not make a mistake such that there would have been a great likelihood that the defendant would not have been convicted but for the mistake.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — APPEAL.

A motion for a new trial or for an evidentiary hearing is generally a prerequisite for appellate review of a defendant's claim of ineffective assistance of counsel, unless the detail of the deficiency is apparent in the record so as to permit the Court of Appeals to decide the issue.

6. CRIMINAL LAW — PLEA BARGAINS — *MIRANDA* WARNINGS.

A defendant who agrees to provide information under the terms of a plea bargaining agreement and who later provides such information need not be given *Miranda* warnings to allow the statements to be used against him in subsequent prosecutions.

7. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — SAME TRANSACTION — DUAL JURISDICTIONS.

The state constitution prohibits a second prosecution for an

offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different; this state's interests are substantially different where 1) the maximum penalties involved are greatly disparate, 2) there is some reason the other sovereign cannot be trusted to fully vindicate this state's interest in securing a conviction, or 3) the difference in the laws of the jurisdictions are more substantive than jurisdictional.

8. CRIMINAL LAW — CRUEL AND UNUSUAL PUNISHMENT.

A sentencing within the statutory limits for the crime defendant was convicted of may not constitute cruel and unusual punishment.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mattee,* Assistant Prosecuting Attorney, for the people.

*Allsopp, Fitzgerald & Kolka, P.C.* (by *Arthur M. Fitzgerald*), for defendant on appeal.

Before: CYNAR, P.J., and SAWYER and J. A. GILLIS,* JJ.

PER CURIAM. Following a bench trial, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and one count of second-degree CSC, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). Defendant's 50-to-150-year prison sentences for the two first-degree CSC charges ran concurrently with each other and concurrently with defendant's ten-to-fifteen-year prison sentence for second-degree CSC. Defendant appeals as of right. We affirm.

Defendant pled guilty to one count of knowingly mailing five color Polaroid photographs, the production of which involved the use of a minor

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

engaging in sexually explicit conduct and which depicted a minor child engaged in such conduct. 18 USC 2252(a)(1). Before defendant's arrest on that charge, defendant's home was searched pursuant to a federal search warrant. Sexually explicit material involving minors was seized. Defendant entered into a sentence agreement with the federal authorities and agreed to provide the federal government with the names of persons appearing in the photographs as well as other distributors. Defendant did provide the names of several people who were in the photographs to the federal authorities.

Thereafter, the state authorities apparently read of defendant's guilty plea and asked the federal authorities to forward such materials to them. The federal authorities forwarded the materials; however, the local authorities did not receive the names of all the persons involved in the photographs. On September 6, 1984, the local authorities received a picture which involved an unknown minor. The following day, a police officer contacted defendant's wife and showed her the pictures received. She identified defendant as being in one picture and also stated that two of the pictures were taken in her home. She further identified the child in the picture received on September 6 as someone other than the present victim. She then identified one of the children, who had been photographed, as the victim in this case. She was unable to identify other victims who were photographed.

At trial, the victim testified that at various times during the summer of 1980, when she was ten years old, defendant made her feel his erect penis, made her perform fellatio upon him, and engaged in vaginal intercourse with her. Defendant photographed these latter two acts by using a

timer on his camera. Although defendant was apparently not entirely visible in some of these pictures, the victim identified the six pictures as being those of herself and defendant.

Gary Kinney from the United States Postal Service testified that the photographs identified by the victim were seized from defendant's home pursuant to a federal search warrant. Defendant did not present any defense. As noted above, the trial court found defendant guilty on all three counts.

Defendant first claims that he was denied a fair trial because of a long-standing conflict between his trial counsel and the trial court. We will treat defendant's claim as one that the trial judge should have granted defendant's motion to disqualify himself. A judge should be disqualified when he cannot impartially hear a case because he is personally biased or prejudiced against a party or attorney. MCR 2.003(B)(2). Where the challenged judge denies the motion, the chief judge shall decide the motion de novo. MCR 2.003(C)(3)(a). An order denying a party's motion for disqualification will be reversed only where the court abused its discretion. *Czuprynski v Bay Circuit Judge,* 166 Mich App 118, 124; 420 NW2d 141 (1988). Moreover, the party moving for disqualification bears the burden of proving actual bias or prejudice. *Id.*

Defendant's trial attorney was Mr. Edward Czuprynski. The trial judge was Bay Circuit Judge Eugene Penzien. The chief judge was Bay Circuit Judge William Caprathe.

Czuprynski filed a motion to disqualify Judge Penzien on the following grounds: (1) in Czuprynski's first trial before Judge Penzien, *Madigan v Madigan,* unpublished opinion per curiam of the Court of Appeals, decided November 6, 1985

(Docket No. 80119), lv den 425 Mich 884 (1986),[1] Judge Penzien engaged in numerous improper actions; (2) after Czuprynski was charged with a misdemeanor, of which he was later acquitted, the circuit court no longer appointed him as counsel for indigents on the ground that it might be alleged that Czuprynski was not vigorous in his clients' defenses because he feared retaliation in his own case; apparently, Czuprynski withdrew from an unrelated criminal case, where he had been appointed counsel, when Judge Penzien informed the defendant in that case of the appearance of impropriety which might have resulted; (3) in another unrelated criminal case, where Czuprynski was appointed counsel, Judge Penzien declined to hear Czuprynski's motion for disqualification because he had failed to attach an affidavit as required by the court rules; (4) in that same matter, Judge Penzien offered to appoint different counsel for the defendant because Czuprynski believed that Judge Penzien was prejudiced against him and, therefore, he might act in a different manner before Judge Penzien than another judge; (5) in another unrelated civil matter, Judge Penzien allegedly acted in a prejudicial manner toward Czuprynski, including denying his motion for disqualification in that case; (6) in yet another unrelated civil matter, Judge Penzien again treated Czuprynski in an unfair manner and again denied his motion for disqualification; (7) Judge Penzien unjustifiably reduced Czuprynski's attorney fees in appointed criminal cases; and (8) previous political involvements of Judge Penzien and Czuprynski, including Judge Penzien's involvement in Czuprynski's resignation as an investigator from the public defender's office following Czu-

---

[1] Judge Penzien's decision was affirmed by this Court in a two-to-one decision.

prynski's guilty plea to a possession of marijuana charge, made it impossible for Judge Penzien to treat Czuprynski fairly. Czuprynski also filed a complaint against Judge Penzien with the Judicial Tenure Commission and filed a complaint for writ of superintending control to permanently disqualify Judge Penzien from presiding over cases in which Czuprynski was counsel. *Czuprynski, supra.*

In *Czuprynski,* this Court noted that such relief was given in *Auto Workers Flint Federal Credit Union v Kogler,* 32 Mich App 257; 188 NW2d 184 (1971). In *Auto Workers,* one hundred motions to disqualify Genesee Circuit Judge Donald Freeman were filed by a law firm and most were granted by the other circuit judges because the affidavits in support of those motions sufficiently disclosed prejudice and hostility toward the law firm on the basis of events which had occurred before the judge's election. This Court held that the judge's past conduct along with a grievance filed by the law firm with the State Bar was sufficient to permanently disqualify Judge Freeman from hearing the law firm's cases. *Auto Workers, supra.*

In *Czuprynski,* this Court distinguished *Auto Workers,* noting that Czuprynski had filed twenty-five motions to disqualify Judge Penzien during Czuprynski's four-year practice and, of those which had been referred to Judge Caprathe, all had been denied. This Court further rejected Czuprynski's claim that the filing of a grievance against Judge Penzien with the Judicial Tenure Commission required him to be permanently disqualified from hearing Czuprynski's cases. *Czuprynski, supra,* p 126.

In *Clemens v Bruce,* 122 Mich App 35; 329 NW2d 522 (1982), this Court held that the circuit judge should be disqualified from hearing a case where the attorney had filed a complaint against

him with the Judicial Tenure Commission as the result of a dispute over counsel's appointment in criminal cases. This Court held that, even in the absence of actual prejudice, the probability of actual bias was too high where the attorney had personally abused or criticized the judge or the judge was enmeshed in other matters involving the attorney (i.e., the filing of a complaint with the Judicial Tenure Commission).

While we believe that the remedy of disqualification may have been proper in *Clemens,* we disagree that the mere filing of a party's or attorney's complaint is sufficient to require automatic disqualification. To hold otherwise would allow an attorney to judge shop by filing even frivolous grievances. We note that the Judicial Tenure Commission's proceedings are confidential as to the judge until a complaint is filed by the commission, the judge is privately censured, or the investigation is dismissed. MCR 9.207. Hence, we believe that disqualification is not required until the judge is privately censured or a complaint is filed by the Judicial Tenure Commission itself. See and compare *Czuprynski, supra,* p 126; *Clemens, supra.*

Czuprynski took defendant's case before the preliminary examination after defendant's other counsel withdrew. On September 20, 1985, defendant moved to permanently disqualify Judge Penzien for the above-discussed reasons. Following a lengthy hearing, Judge Penzien denied defendant's motion only after thoroughly responding to the allegations contained in defendant's motion.

Defendant then moved for an evidentiary hearing before Judge Caprathe on the disqualification issue. Judge Caprathe properly denied defendant's motion for an evidentiary hearing because the chief judge must decide such motions by a de novo review of the record. MCR 2.003(C)(3)(a).

On November 22, 1985, defendant brought a new motion to permanently disqualify Judge Penzien. This motion was essentially the same as the previous motion, but added Judge Penzien's ruling on the previous motion in support of defendant's claim. Judge Penzien again denied defendant's motion.

On February 3, 1986, defendant filed a renewed motion to permanently disqualify Judge Penzien. Defendant claimed new evidence of Judge Penzien's bias, including the fact that Czuprynski had filed a grievance against Judge Penzien with the Judicial Tenure Commission. Defendant relied on *Clemens, supra.* Judge Penzien again denied defendant's motion. In particular, Judge Penzien noted that he had not been contacted by the Judicial Tenure Commission and did not believe that mere filing of a complaint with the commission should result in disqualification absent a real dispute between the participants which would affect the trial court's ability to impartially hear the matter.

Defendant then moved for a de novo review of the motions to permanently disqualify Judge Penzien before Judge Caprathe. Defendant again moved for an evidentiary hearing on the motion. Judge Caprathe denied defendant's motion for an evidentiary hearing. MCR 2.003(C)(3)(a). Defendant then moved to disqualify Judge Caprathe from hearing the motion to disqualify Judge Penzien. Following a hearing, Judge Caprathe denied defendant's motion to disqualify him and also denied the motion to disqualify Judge Penzien.

Having thoroughly reviewed Czuprynski's allegations as well as the transcripts of the hearings held and the opinions issued, we hold that neither Judge Penzien nor Judge Caprathe abused his discretion when each denied the various disqualifi-

cation motions which were made. *Czuprynski, supra,* p 124.

Defendant next claims that he was denied effective assistance of counsel because Czuprynski was involved in his own personal battle with Judge Penzien. In particular, defendant claims that Czuprynski failed to pursue an insanity defense and failed to move to suppress evidence allegedly derived from defendant's allegedly involuntary statement to the federal authorities.

The test for ineffective assistance of counsel is a bifurcated one. *People v Juarez,* 158 Mich App 66, 73; 404 NW2d 222 (1987). First, defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law. *Id.* Second, even if this first test is satisfied, defense counsel must not have made a serious mistake but for which defendant would have had a reasonably likely chance of acquittal. *Id.*

Generally, a defendant, who claims that counsel was ineffective, must move for a new trial or file a motion for remand for an evidentiary hearing in order to preserve the issue for appellate review. *Id.* Nonetheless, where the record below is sufficient, no such motions need be made. *Id.* Here, defendant has not filed a motion for a new trial or for remand; therefore, we must rely on the record below.

Defendant's initial counsel's motion for forensic examination was granted. Defendant was found competent to stand trial and the parties stipulated to the contents of the forensic report. That report is not included in the record.

On December 16, 1985, defendant filed a notice of insanity defense. Defendant claimed the testimony of Drs. Knack, Maroquin, Nichols and Smith would support his defense. The prosecution filed a notice of rebuttal to the insanity defense on De-

cember 30, 1985, listing those same witnesses in support of its notice.

Defendant moved for adjournment of the February trial date because he had not had sufficient time to have his psychological evaluations completed. The prosecutor opposed the motion to adjourn claiming that defendant's notice of insanity defense was untimely filed. A notice of insanity defense must be filed not less than thirty days before the date set for trial. MCL 768.20a(1); MSA 28.1043(1)(1). The original trial dates were December 3 and 16, 1985. The adjourned trial dates were January 14, 1986, and then February 26. While the trial court noted that it believed that defendant's notice was untimely, it held that it had not formally been requested to rule on the prosecutor's claim that the notice was untimely because only an oral argument had been made rather than a written motion filed. The trial court noted that defendant might not choose to pursue an insanity defense and, therefore, the issue could be moot. The trial court then held that it would reserve its ruling on the timeliness issue until trial, at which point the prosecutor could orally object to the notice's timeliness. The trial court denied defendant's motion to adjourn because there was no reason given why the psychologist's reports could not be completed by the February 26 trial date. As noted above, defendant presented no defense.

Reviewing the entire record, we cannot say that Czuprynski's failure to present an insanity defense at trial was ineffective assistance of counsel. *Juarez, supra.* Compare *People v Lotter,* 103 Mich App 386, 390-391; 302 NW2d 879 (1981), lv den 412 Mich 852 (1981); *People v Blocker,* 45 Mich App 138; 206 NW2d 229 (1973), aff'd 393 Mich 501 (1975).

Defendant also claims Czuprynski was ineffec-

tive because he failed to move to suppress allegedly involuntary statements defendant gave the federal authorities. In particular, defendant claims that he disclosed the victim's name to the federal authorities as part of his plea bargain and that this information was given to the state authorities. But see the facts discussed above. Defendant asserts that this information, acquired under a grant of federal immunity, could not be utilized in a later state prosecution. Defendant relied on *Murphy v Waterfront Comm of New York Harbor,* 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964).

On January 29, 1986, Czuprynski moved to quash the information on the grounds of the previously granted immunity. Defendant claimed the state authorities were required to honor the immunity granted in the federal prosecution and that the state's prosecution was barred by the previously granted immunity. Defendant further claimed that his rights against self-incrimination would be violated if the state prosecution continued in light of the previously granted federal immunity.

On February 10, 1986, defendant filed an amended motion to quash the information on grounds of previously granted immunity and use of an involuntary statement. The motion was essentially the same as defendant's previous motion. In both motions, defendant requested an evidentiary hearing to establish the grounds supporting his motion.

During a hearing on defendant's various motions, the prosecutor asked if defendant's amended motion to quash could be heard because he had some witnesses to present on that motion. Judge Penzien agreed; however, defendant objected, claiming that he had no witnesses to present because his motion had asked for an evidentiary

hearing. Eventually, Judge Penzien asked Czuprynski if he could call defendant to the stand to indicate what promises outside of the plea agreement were made. Czuprynski refused, claiming that he wanted to call Kinney first and that defendant's testimony was protected by the attorney-client privilege. Czuprynski further noted that he was pursuing an insanity defense. Judge Penzien ruled that the federal agreement was clear in that it only barred federal prosecution for other mailings and that defendant's motion merely alleged that defendant had made the statements pursuant to the federal agreement, but would not have made them if he had known of the subsequent state proceedings. This, the trial court held, was not the same as a promise of total immunity and, where defendant was unwilling to testify that any promises were made regarding state immunity, defendant's statements were voluntary.

In *Murphy, supra,* the United States Supreme Court held that, where a witness before a state grand jury is compelled to testify under a grant of state immunity, the constitutional privilege of self-incrimination protects the state witness against incrimination under state as well as federal law. Similarly, a federal witness compelled to testify before a federal grand jury under a grant of federal immunity is protected against incrimination under federal as well as state law unless the authorities from the other sovereign demonstrate that they have an independent, legitimate source for the disputed evidence.

We agree with Judge Penzien that defendant's testimony was not coerced. Defendant was free to enter the plea agreement, which provided limited federal immunity for the information disclosed, or to reject it. We believe *Murphy* is distinguishable on this basis.

Defendant also claims that he should have been given *Miranda* [*v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] warnings concerning possible later state prosecutions. We believe that *Miranda* is inapplicable where defendant agrees to provide information under the terms of a plea bargain and later provides such information.

Defendant next claims the state prosecution violated his state right against double jeopardy. In *People v Cooper*, 398 Mich 450, 461; 247 NW2d 866 (1976), our Supreme Court held:

> Const 1963, art 1, § 15 prohibits a second prose-cution for an offense arising out of *the same criminal act* unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different. Analysis on a case-by-case basis cannot be avoided. [Emphasis supplied.]

This state's interest would be substantially different if: (1) the maximum penalties involved in the federal and state prosecutions are greatly disparate; (2) there is some reason the other sovereign cannot be entrusted to fully vindicate this state's interest in securing a conviction; or (3) the differences in the state and federal statutes are more substantive than jurisdictional. *Id.*

We note that defendant moved to dismiss the information below on double jeopardy grounds. The prosecutor responded that this case did not involve the same conduct because the pictures mailed by defendant, which served as the basis of his guilty plea, were not pictures of the victim. Moreover, even if they were, the factors enumerated in *Cooper* supported prosecution in this case. The trial court held that defendant failed to assert that the photographs of the victim were used to obtain defendant's federal conviction. In any event, the trial court ruled that the same criminal

conduct was not punished by each sovereign and, even if it was, *Cooper* allowed the state prosecution because Michigan's and the federal government's interests were substantially different (i.e., there were substantive differences between the state and federal statutes).

We agree with Judge Penzien's ruling. We note that defendant's federal prosecution was for mailing pictures, the production of which involved the use of a minor engaging in sexually explicit conduct. 18 USC 2252(a)(1). Defendant did not have to be involved in the conduct or produce the pictures. On the other hand, this state's csc statutes prohibit one from engaging in sexual penetration of or sexual contact with a minor. MCL 750.520b(1)(a) and 750.520c(1)(a); MSA 28.788(2)(1)(a) and 28.788(3)(1)(a). Here, defendant assaulted the then-ten-year-old victim on different occasions during the summer of 1980. The photographs defendant was charged with mailing in the federal prosecution were sent in late 1983 and were apparently not pictures of this victim. Clearly, the federal and state charges against defendant did not arise out of the same criminal act. *Cooper, supra.*

Finally, defendant claims that his sentence, which greatly exceeded the sentencing guidelines recommendation of from three to six years' imprisonment, was either cruel and unusual punishment or was the result of an abuse of discretion. The sentences imposed were within the statutory limits and, therefore, were not cruel and unusual. *People v Glantz,* 124 Mich App 531, 535-536; 335 NW2d 80 (1983); *People v Banks,* 116 Mich App 446, 451; 323 NW2d 436 (1982). As to defendant's claim that his sentence should shock our conscience, we can only unanimously state that this pedophile's crimes were shocking, his sentence was not. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

Affirmed.