COBLE v GREEN

Docket No. 257946. Submitted April 3, 2006, at Lansing. Decided June 15, 2006, at 9:00 a.m. Leave to appeal sought.

Douglas and Rochelle Coble filed a legal malpractice action in the Ingham Circuit Court against Russell L. Green and Russell L. Green, P.C., after Green's delayed filings caused Douglas Coble's appeal to be involuntarily dismissed. Douglas Coble had sought to appeal a ruling in a paternity action that ordered him to pay child support, despite the fact that this Court had previously ruled that another man was the child's equitable father. The court, Richard J. Garcia, J., ruled that because the child support order would have been reversed on appeal, Green's negligence in failing to perfect the appeal proximately caused the plaintiffs' damages.

The Court of Appeals *held*:

1. The trial court properly determined that there was no factual question concerning whether the defendants were negligent in handling the appeal. Green failed to timely file a claim of appeal, failed to timely file a docketing statement after having been warned to do so, and failed to notify Coble that the appeal was dismissed, thereby preventing him from pursuing other avenues of appeal. The fact that Coble had not timely paid Green's legal fees was irrelevant, because an attorney who has entered an appearance may not withdraw without a court order.

2. The trial court properly denied the defendants' motion for summary disposition. The child's mother had no standing to bring a paternity action against Coble because the mother's husband had been determined to be the child's equitable father and, therefore, the child was not born out of wedlock. Therefore, the circuit court's consideration of the paternity action was improper, and the trial court correctly concluded, as a matter of law, that Coble would have prevailed on appeal.

3. The trial court did not err in denying the defendants' motions for judgment notwithstanding the verdict and for a new trial. The defendants did not show that the trial judge was actually prejudiced or biased, the trial court properly instructed the jury that the only issue for its determination was the amount of damages, and the

evidence defendants sought to introduce was irrelevant in light of the fact that the child's mother had no standing to bring the paternity action.

4. The defendants' argument that the trial court abused its discretion in denying their motion for remittitur was without merit. The trial court correctly determined as a matter of law that the defendants caused plaintiffs' damages, the evidence supported the damage award, and the jury rejected the defendants' counterclaim for attorney fees.

Affirmed.

ATTORNEY AND CLIENT — LEGAL MALPRACTICE — DEFENSES.

The fact that an attorney's client has failed to timely pay his or her legal bills is not a defense to legal malpractice; an attorney who has entered an appearance may only withdraw from representation on court order.

*Nora Lee Wright* for the plaintiffs.

*Josh Fields and Associates* (by *Joseph H. Fields*) for the defendants.

Before: KELLY, P.J., and JANSEN and TALBOT, JJ.

KELLY, P.J. In this legal malpractice case, defendants appeal as of right a judgment entered against them following a jury trial. We affirm. Because a court determination that a man is the equitable father of a child is mutually exclusive of a determination that the child was born out of wedlock, an equitable parentage order precludes the mother from having standing to assert a paternity action regarding that child.

I. FACTS AND PROCEDURE

This case arises from a lengthy and somewhat complicated factual and procedural history.

A. *YORK v MOROFSKY*

Cynthia York was married to Chester Morofsky when

she and plaintiff Douglas Coble had sexual relations, which produced a child named Joshua, born in April 1987. When York and Coble had sexual relations, Coble was married to York's sister. York later filed for divorce in the Ionia Circuit Court and claimed that Morofsky, who had acted as a father to Joshua for approximately five years, was not Joshua's biological father. Morofsky sought parenting time with Joshua, but repeatedly stated that he believed York's assertions that he was not Joshua's biological father and waived a court-ordered blood test. The Ionia Circuit Court determined that Morofsky was neither Joshua's biological father nor Joshua's equitable father and, therefore, denied Morofsky's request for parenting time. In *York v Morofsky*, 225 Mich App 333; 571 NW2d 524 (1997), this Court held that because Morofsky was Joshua's equitable father with all the rights and responsibilities of a parent, he could be granted parenting time and ordered to pay child support.

### B. *YORK v COBLE*

Subsequently, it appears, Morofsky was jailed for failure to pay child support.[1] York then brought a paternity action in the Ionia Circuit Court against Coble, who was represented by defendant Russell L. Green. After the Ionia Circuit Court ordered Coble to pay child support, Coble paid Green $500 to pursue an appeal. Green filed a delayed application for leave to appeal in this Court, but the appeal was involuntarily dismissed for failure to file a docketing statement. *York v Coble,* unpublished order of the Court of Appeals, entered March 27, 2001 (Docket No. 228309). Green failed to pay the $200 fine and ultimately incurred an

---

[1] Coble testified to this fact. However, the trial court excluded other evidence along these lines.

additional $100 show-cause fine. Coble testified that Green never informed him of the dismissal. Sometime after August 20, 2001, Coble came to this Court personally and discovered that his appeal had been dismissed.

### C. *COBLE v GREEN*

Plaintiffs subsequently filed this legal malpractice action against defendants. Defendants moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiffs' claim failed as a matter of law because Coble's appeal of the Ionia Circuit Court's order requiring him to pay child support would not have been successful; therefore, plaintiffs could not show that Green's negligence was the proximate cause of the alleged damages. The trial court denied defendants' motion, concluding that because Joshua already had a legal father, Coble could not be liable for Joshua's child support as a matter of law. The court reasoned that, because the order requiring Coble to pay child support would have been "quickly reversed" on appeal, Green's negligence in failing to perfect that appeal proximately caused plaintiffs' damages. On the issue of damages only, the jury rendered a $40,000 verdict for plaintiffs.

### II. ANALYSIS

### A. DIRECTED VERDICT

Defendants contend that the trial court erred in granting plaintiffs' motion for a directed verdict on the issue whether Green committed legal malpractice. Although plaintiffs' motion for directed verdict took place after the motion for summary disposition discussed below, we review it first because it facilitates the logical flow of our analysis. We review de novo a trial court's grant of a directed verdict. *Sniecinski v Blue Cross &*

*Blue Shield of Michigan,* 469 Mich 124, 131; 666 NW2d 186 (2003). In determining whether a question of fact existed that would preclude a directed verdict, we draw every reasonable inference in favor of the nonmoving party, *Elezovic v Ford Motor Co,* 472 Mich 408, 418; 697 NW2d 851 (2005), while recognizing the trial court's superior opportunity to observe witnesses, *Wiley v Henry Ford Cottage Hosp,* 257 Mich App 488, 491; 668 NW2d 402 (2003).

"In order to establish a claim of legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and extent of the injury alleged." *Mitchell v Dougherty,* 249 Mich App 668, 676; 644 NW2d 391 (2002).

The trial court ultimately determined that there was no question of fact regarding whether Green was negligent in handling Coble's appeal. We agree. Green, after failing to timely file a claim of appeal, filed a delayed application for leave to appeal. He then failed to timely file a docketing statement after this Court issued a warning. Coble's appeal was ultimately dismissed and fines were assessed. Moreover, Green failed to notify Coble that the appeal was dismissed, thereby precluding him from taking action to reinstate the appeal or take action in the Supreme Court. By the time Coble learned that his appeal had been dismissed, all the deadlines for taking such actions had passed. We are unpersuaded by defendants' argument that Green, despite his admitted failures, was not negligent because Coble failed to timely or adequately pay Green. It is well established that an attorney who has entered an appearance may withdraw from the action only on court order. MCR 2.117(C)(2). This Court never ordered

Green's withdrawal. Therefore, Green's duty as Coble's appellate attorney persisted despite the inadequacy of Coble's payments. The trial court did not err in ruling, as a matter of law, that Green was negligent in handling Coble's appeal.

### B. SUMMARY DISPOSITION

Defendants also argue that the trial court erred in denying their motion for summary disposition because, in York's paternity action, the Ionia Circuit Court correctly ordered Coble to pay child support, Coble's appeal of this order would have been unsuccessful, and, therefore, Green's failure to perfect Coble's appeal was not the proximate cause of plaintiffs' claimed damages. We disagree.

> A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. [*Smith v Stolberg,* 231 Mich App 256, 258; 586 NW2d 103 (1998) (citation omitted).]

In reviewing a trial court's decision on a motion brought pursuant to MCR 2.116(C)(8), this Court accepts as true all factual allegations in the complaint and reasonable inferences that may be drawn from them. *Id.*

"In order to establish proximate cause, a plaintiff must show that a defendant's action was a cause in fact of the claimed injury. Hence, a plaintiff must show that, but for an attorney's alleged malpractice, the plaintiff would have been successful in the underlying suit." *Manzo v Petrella,* 261 Mich App 705, 712; 683 NW2d

699 (2004). Whether a plaintiff would have been successful in the underlying action is a question of law, which we review de novo. *Charles Reinhart Co v Winiemko,* 444 Mich 579, 592; 513 NW2d 773 (1994).

"Standing to pursue relief under the Paternity Act, MCL 722.711 *et seq.,* is conferred on the mother or father of a child born out of wedlock, or on the Family Independence Agency [now the Department of Human Services] in limited circumstances." *In re KH,* 469 Mich 621, 631-632; 677 NW2d 800 (2004). According to MCL 722.711(a), a child born out of wedlock is one who was either "begotten and born to a woman who was not married from the conception to the date of the birth of the child" or "a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage."

In *York,* this Court determined that Joshua was born during York and Morofsky's marriage. *York, supra* at 334. The Court further determined that, while Morofsky was not Joshua's biological father, he was Joshua's equitable father with all the rights and responsibilities of a natural father. *Id.* at 337, 340. This Court explained that "equitable parenthood is a permanent status once it attaches." *Id.* at 337. It does not ebb and flow over time, even when an equitable parent is subsequently unable or unwilling to pay support for the child. *Id.* at 338-339. This Court further noted that an equitable parent " 'stands on equal footing with any other natural or adoptive parent.' " *Id.* at 338, quoting *Soumis v Soumis,* 218 Mich App 27, 34; 553 NW2d 616 (1996).

When this Court conferred on Morofsky the status of Joshua's equitable father with the same rights as a natural father, it precluded the determination that Joshua was born out of wedlock. Because Joshua was

not born out of wedlock, York did not and does not have standing to pursue a paternity action, regarding Joshua, against anyone. The Ionia Circuit Court improperly considered York's paternity action against Coble and incorrectly ordered Coble to pay child support. Therefore, the trial court did not err in ruling as a matter of law that Coble would have been successful in his appeal. Accordingly, we conclude that the trial court did not err in ruling, as a matter of law, that Green was negligent in handling Coble's appeal and that this negligence was the proximate cause of plaintiffs' alleged damages.

### C. JNOV AND NEW TRIAL

Defendants next argue that the trial court erred in denying their motions for judgment not withstanding the verdict (JNOV) and new trial. Defendants contend that the trial court committed the following errors, which entitled them to either JNOV or a new trial: (1) the trial judge failed to recuse himself; (2) the trial court failed to provide appropriate jury instructions and provided inappropriate jury instructions; and (3) the trial court excluded evidence of the equitable father's inability to pay support and defendants' expert witness rebuttal testimony. This Court reviews de novo a trial court's decision on a motion for JNOV. *Sniecinski, supra* at 131. We review for an abuse of discretion the trial court's decision on a motion for a new trial. *Bean v Directions Unlimited, Inc,* 462 Mich 24, 34-35; 609 NW2d 567 (2000).

### 1. RECUSAL

Defendants argue that JNOV or a new trial should have been granted because the trial judge erred in failing to disqualify himself from this case. We disagree.

A party may move to disqualify a judge pursuant to MCR 2.003. "A judge is disqualified when he cannot hear a case *impartially* pursuant to MCR 2.003(B)." *Cain v Dep't of Corrections*, 451 Mich 470, 494; 548 NW2d 210 (1996). A trial judge is presumed to be impartial, and the party asserting partiality has the heavy burden of overcoming that presumption. *Id.* at 497.

Defendants assert that the following provided a basis for the trial judge's disqualification: (1) Green is a practicing attorney in Ingham County who appears before all of its judges; (2) the other Ingham circuit judges disqualified themselves; and (3) Green filed a judicial tenure complaint against the trial judge. However, the trial judge correctly observed that he was not required to disqualify himself simply because Green was a local practitioner or because all the other Ingham circuit judges recused themselves for that reason. *Reno v Gale*, 165 Mich App 86, 90; 418 NW2d 434 (1987). Further, the fact that Green filed a judicial tenure complaint against the trial judge did not automatically disqualify the judge from hearing this case. *Ireland v Smith*, 214 Mich App 235, 249; 542 NW2d 344 (1995), mod on other grounds 451 Mich 457 (1996). In *People v Bero,* 168 Mich App 545, 552; 425 NW2d 138 (1988), this Court stated, "To hold otherwise would allow an attorney to judge shop by filing even frivolous grievances." Because defendants failed to show any actual prejudice or bias, the trial judge did not err in refusing to disqualify himself, and defendants were not entitled to JNOV or a new trial on this basis.

## 2. JURY INSTRUCTIONS

Defendants next assert that JNOV or a new trial should have been granted because the trial court im-

properly instructed the jury. Defendants assert that the trial court erred in refusing to instruct the jury on Coble's "unclean hands" arising from "unsavory and unlawful acts," i.e., adultery. However, defendants have failed to support this argument by citation of any authority demonstrating that an instruction on "unclean hands" was applicable to this case and, therefore, have abandoned this argument. *Yee v Shiawasee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Defendants also argue that the trial court erred when it instructed the jury that the only issue for its determination was the amount of damages. Because we have determined that that the trial court did not err in concluding, as a matter of law, that defendants' negligence was the proximate cause of plaintiffs' damages, the trial court's instruction was appropriate. Defendants were not entitled to either JNOV or a new trial on the basis of any instructional error.

### 3. EVIDENTIARY ISSUES

Defendants also assert that JNOV or a new trial should have been granted because of evidentiary errors. Defendants challenge the trial court's exclusion of evidence regarding Morofsky's inability to pay child support. However, in light of our determination that York had no standing to bring a paternity action against Coble, evidence of Morofsky's inability to pay child support had no tendency to make any fact of consequence to this case more or less probable. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 188-189; 600 NW2d 129 (1999). The trial court did not abuse its discretion, *id.* at 188, in excluding this evidence.

Defendants also assert that the trial court abused its discretion in not allowing their expert witness and Green to testify about their opinions regarding proxi-

mate causation and mitigation of damages. As discussed above, the trial court correctly determined as a matter of law that Green was negligent and that his negligence proximately caused the alleged damages. Therefore, this evidence was properly excluded and the trial court's ruling does not provide a basis for JNOV or a new trial.[2]

### D. REMITTITUR

Defendants also argue that the trial court abused its discretion when it denied their motion for remittitur. We disagree. We review a trial court's decision on a motion for remittitur for an abuse of discretion. *Diamond v Witherspoon,* 265 Mich App 673, 692; 696 NW2d 770 (2005). "In determining whether to grant a motion for remittitur a trial court must consider whether the evidence supported the jury award." *Id.* at 693. "When reviewing a trial court's decision regarding remittitur, this Court must view the evidence in the light most favorable to the nonmoving party." *Id.*

Defendants' remittitur argument is essentially that the verdict should have been zero because defendants did not cause plaintiffs' damages; rather, Coble himself caused the alleged damages and should "alone be made to suffer any and all emotional distress from his impregnating his sister-in-law and then seeking to avoid paying sums duly ordered to help support his son." This argument is merely a reiteration of defendants' argu-

---

[2] Furthermore, defendants never filed a witness list. It was not until the second day of trial that defense counsel was made aware of his failure to file a witness list and requested permission to call his expert notwithstanding this error. The trial court denied defendants' request to add an expert witness "in the middle of trial." Because we decide this issue on other grounds, we need not determine whether the trial court abused its discretion in making this ruling.

ment that the trial court erred in denying their motion for summary disposition, which we have already concluded is without merit.

We are also unpersuaded by defendants' argument that the award should not have included future child support payments that Coble may not be required to pay. We first note that Joshua turned 18 in April 2005. The judgment in this case was entered on June 23, 2004. Thus, only ten months remained on Coble's ordered child support obligation. Nonetheless, even if Coble could obtain a reprieve from those remaining payments, it is not clear from the record that the jury award included unmade payments. The jury verdict did not designate amounts for economic and noneconomic damages.[3] Because the evidence supports the award, there is no basis for remittitur.

We also reject defendants' argument that the verdict should be reduced by the amount Coble owes defendants in attorney fees because the jury returned a no-cause verdict on defendants' counterclaim for these fees.

Affirmed.

---

[3] Noneconomic damages may be awarded in a legal malpractice case. *Gore v Raines & Block,* 189 Mich App 729, 740-741; 473 NW2d 813 (1991).