**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

*In re* CONSERVATORSHIP OF MADLIEN KHAMI.

IRENE MAHTANEY,

          Petitioner-Appellant,

and

ROGER KHAMI,

          Petitioner,

v

MADLIEN KHAMI,

          Respondent-Appellee,

and

MICHAEL KHAMI, JAMES KHAMI, JOHN KHAMI, DIANE MANSOOR, CAROL JOHNSON, THERESA BRUNE, ROBERT KHAMI, CHRISTINE KHAMI, and ROBERT DICKENSON,

          Interested Parties.

UNPUBLISHED
May 10, 2016

No.   323401
Oakland Probate Court
LC No.   2014-354962-CA

*In re* GUARDIANSHIP OF MADLIEN KHAMI.

ROGER KHAMI,

          Petitioner-Appellant,

and

IRENE MAHTANEY,

          Petitioner,

v

MADLIEN KHAMI,

          Respondent-Appellee.

No.   326827
Oakland Circuit Court
LC No.   2014-142636-AV

-1-

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Petitioners, children of respondent Madlien Khami, filed separate petitions to be appointed guardian and conservator of their mother. Following an evidentiary hearing, the probate court denied both petitions. In Docket No. 323401, petitioner Irene Mahtaney ("Irene") appeals by right the probate court's order denying her petition for appointment as respondent's conservator. In Docket No. 326827, petitioner Roger Khami ("Roger") appeals by leave granted[1] the circuit court's order affirming the probate court's denial of his petition for appointment as Khami's guardian. This Court consolidated the appeals.[2] We vacate the circuit court's order in Docket No. 326827 and the probate court's orders in both dockets, and remand to the probate court for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Attorney Elias Escobedo originally represented both petitioners in the probate court proceedings. The petitions were filed on February 14, 2014. In March 2014, a contested hearing on the petitions was adjourned by stipulated order from March 5, 2014 to March 19, 2014. On March 14, 2014, petitioner filed her objections to Irene's petition; the record reflects that the contested hearing was then adjourned to April 16, 2014. However, on March 21, 2014, the trial court issued a scheduling order setting the date of contested hearing on both petitions for May 14, 2014 and ordering parties first to engage in mediation. The mediation commenced on May 5, 2014, but was not then concluded, and on May 7, 2014, the probate court adjourned the hearing and issued an amended scheduling order setting a new hearing date of June 18, 2014. A second amended scheduling order was filed on May 9, 2014 that also listed the new hearing date as June 18, 2014. All scheduling orders issued stated that the contested hearing could only be adjourned for good cause.

On June 13, 2014, Escobedo filed an emergency motion to adjourn the contested hearing. Escobedo informed the court that, after mediation, petitioners were not satisfied with a proposed protective order to settle their claims and, as of June 6, 2014, they wanted to proceed with the contested hearing. The motion further stated that, on June 6,[3] Escobedo advised petitioners that he felt he could no longer assist them in this action, and that they advised that they would seek substitute counsel. However, they had not yet retained new counsel as of June 13, 2014 and, in fact, Escobedo indicated that he learned on that date that a prospective new counsel had declined to represent petitioners in this action. Escobedo represented that he had commenced trial in another action in Bay City on June 10, 2014, and that the trial was expected to continue through

---

[1] *In re Conservatorship of Madlien Khami*, unpublished order of the Court of Appeals, issued October 7, 2015 (Docket No. 326827).

[2] *Id*.

[3] The record is unclear whether the actual date was June 6, 2014 or June 9, 2014.

June 25, 2014. Escobedo asked the court to adjourn the scheduled June 18, 2014 hearing to allow petitioners time to retain new counsel. The probate court never issued a ruling on that motion.

On June 17, 2014, Escobedo filed a motion to withdraw as counsel, asserting in virtually identical terms the grounds he had asserted in support of the earlier motion to adjourn, noting (in lieu of referencing his scheduling conflict) the filing of that emergency motion to adjourn on June 13, 2014, and further asserting that "[t]he undersigned [Escobedo] believes there had been a substantial breakdown in the attorney-client relationship."

Also on June 17, 2014 (i.e., the day of the filing of the motion to withdraw), the probate court entered an order granting Escobedo's motion to withdraw. The next morning, i.e., at the outset of the June 18, 2014 contested hearing, Irene requested that the trial court adjourn the hearing for 30 days to allow both petitioners to obtain new counsel. She represented, under oath, that petitioners were notified on June 9, 2014 of Escobedo's scheduling conflict and inability to continue to assist them. She further testified that petitioners had "worked really hard throughout the week" to obtain substitute counsel, and that they had met with an attorney a few days before the hearing; however, she stated that "[b]eing that we had such a very close court date, they would not be able to represent us in court, but I am confident we would be able to hire an attorney within a 30-day period of time." Irene further testified that petitioners were not prepared to call witnesses at the hearing. Respondent's counsel opposed any further adjournment because there had already been an agreed-upon adjournment (to allow continued mediation), because respondent was prepared to proceed with the hearing and with the calling of witnesses, and because the proceedings were having detrimental effects on respondent. Respondent also relied on Escobedo's motion to withdraw and pointed out that the motion indicated that Escobedo had advised petitioners on June 6th that he would no longer be able to assist them. The court proceeded with the hearing, at which petitioners acted as their own counsel. At the conclusion of the hearing, the court found that petitioners had not proven their allegations, and dismissed their petitions without prejudice.[4]

---

[4] We reject respondent's argument that these appeals are moot because she had previously selected other children to act as her patient advocate and her attorney-in-fact under a durable power of attorney, and that these selections obviate the need for a conservator or guardian. A conservator may be appointed for a principal who has previously executed a durable power of attorney. In that event, the attorney-in-fact is accountable to the fiduciary, as well as the principal, and the fiduciary has the same power to revoke or amend the power of attorney as the principal. MCL 700.5503(1). Further, it is clear from MCL 700.5306(2) that the court may grant a petition for guardianship of an incapacitated person who has previously made a patient advocate designation. The statute provides that the authority of the guardian will depend on "the demonstrated need of the incapacitated individual," but that the court "shall not grant a guardian any of the same powers that are held by the patient advocate." *Id.* In some circumstances, however, the court may modify the guardianship's terms to grant the patient advocate's powers to the guardian. MCL 700.5306(4). Thus, respondent's previous appointments of other children

## II. ESCOBEDO'S WITHDRAWAL AS COUNSEL

Petitioners first argue that the trial court erred in allowing Escobedo to withdraw as counsel on June 17, 2014, one day before the scheduled contested hearing. A trial court's decision on an attorney's motion to withdraw is reviewed for an abuse of discretion. *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999).[5]

Once an attorney has entered an appearance, he may withdraw from the action only on order of the court. *Coble v Green*, 271 Mich App 382, 386; 722 NW2d 898 (2006); MCR 2.117(C)(2). Although the Michigan Rules of Professional Conduct are applicable to attorney discipline proceedings and thus do not expressly apply to a counsel's motion to withdraw, courts will consider a request to withdraw within the framework of the professional code. *Withdrawal of Attorney*, 234 Mich App at 432. A lawyer may withdraw "if withdrawal can be accomplished without material adverse effect on the interests of the client." MRPC 1.16(b). Even if the withdrawal might have an adverse effect on the client's interests, a lawyer may still withdraw where the client insists on pursuing a repugnant or imprudent objective, the client fails to fulfill an obligation to the lawyer regarding the lawyer's services, the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client, or for other good cause. MRPC 1.16(b)(3),(4), (5), and (6). This Court has recognized "the importance of balancing counsel's obligation to the client, the extent of the financial burden [to the attorney], and the availability of substitute counsel" when an attorney requests a withdrawal. A lawyer has good cause to withdraw where there has been a total breakdown in the attorney-client relationship. See *Ambrose v Detroit Edison Co*, 65 Mich App 484, 488; 237 NW2d 520 (1975).

In this case, Escobedo waited until the day before the scheduled hearing to move to withdraw. Further, although he had requested an adjournment to allow his clients to seek substitute counsel, the court had not ruled on that motion. Escobedo's withdrawal motion stated that, as of June 13, 2014, petitioners had not yet obtained new counsel, and that, on that date, a prospective substitute counsel had declined to represent petitioners. Finally, the motion stated only that Escobedo had advised petitioners that "he felt he could no longer assist the parties in this action" and that he "believes "there has been a substantial breakdown in the attorney-client relationship."

Petitioners argue that by withdrawing one day before the contested hearing, Escobedo effectively abandoned his representation of petitioners. Petitioners rely on *Pascoe v Sova*, 209

as her patient advocate and her attorney-in-fact do not preclude the appointment of a guardian and conservator for respondent.

[5] With regard to Docket No. 326827, this Court reviews de novo a circuit court's affirmance of a probate court's denial of a motion. See *First of America Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996). Thus, we essentially sit in the same position as the circuit court and review the probate court's rulings in the same manner as the circuit court to determine whether the probate court abused its discretion. See *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). We therefore review both petitioners' arguments under the same standard, notwithstanding the appeal to the circuit court in Docket No. 326827.

Mich App 297; 530 NW2d 781 (1995), in which this Court reversed a default judgment for the plaintiff after the trial court granted the defendant's attorney's motion to withdraw on the day scheduled for trial and the defendant failed to present any evidence at trial to rebut the plaintiffs' evidence. This Court determined that the "key factor" entitling the defendant to relief was that the defendant's attorney never provided notice to the defendant of his intent to withdraw. *Id.* at 300. Further, "[d]espite defendant's apparent lack of interest in participating in his own defense, he was entitled to assume that he would be represented at trial." *Id.* This Court equated the attorney's withdrawal, without notice to the defendant, as "complete abandonment of representation." *Id.* at 300-301.

This case is not factually identical to *Pascoe*. As discussed previously, petitioners did not dispute that Escobedo had advised them before the hearing of his scheduling conflict and inability to continue to assist them, and that they were therefore attempting to find new counsel. In addition to providing petitioners with this advance notice, and obtaining the probate court's approval of his withdrawal, Escobedo also filed an earlier emergency motion to adjourn the hearing in an attempt to provide petitioners with more time to find new counsel. However, Escobedo knew in filing his emergency motion to withdraw that his clients had not found new counsel and that the trial court had not ruled on his motion to adjourn the hearing scheduled for the very next day. Although Escobedo advised petitioners of his withdrawal request, they did not learn that the trial court had granted Escobedo's motion to withdraw until the afternoon before the contested hearing. They were entitled to assume that Escobedo still represented them until their relationship was ended. See *Bye v Ferguson*, 138 Mich App 196, 206; 360 NW2d 175 (1984). Further, the record indicates that Escobedo had not filed a trial brief or an exhibit list in advance of the contested hearing, as required by the scheduling order, although he had filed a witness list. Nor did Escobedo subpoena any witnesses for the hearing. It would hardly be surprising if such a lack of preparation for an imminent evidentiary hearing may have influenced prospective substitute counsel's decision to decline to take on the representation of petitioners so close in time to the scheduled contested hearing.[6]

Finally, there is little if any basis in Escobedo's motion to establish that there had in fact been a breakdown of the attorney client relationship sufficient to constitute good cause for withdrawal. The fact that petitioners rejected a proposed protective order following mediation and wished to proceed with the scheduled contested hearing does not establish a breakdown in the attorney-client relationship. To the contrary, this scenario is a far cry from a total breakdown in the attorney-client relationship, inasmuch as "the client has control of the lawsuit and can refuse even the most reasonable settlement offer." *Ambrose*, 65 Mich App at 524. Thus, "[t]he refusal to settle by a client can never be sufficient grounds to constitute 'good cause' for an attorney to withdraw," although it may be considered as one of the factors in evaluating the level of cooperation that exists between attorney and client. *Id.* Escobedo's motion lists no other factors, apart from referencing his filing of a motion to adjourn that was premised on a

---

[6] Irene represents under oath that, "[a]fter considering the matter and learning from the court that it would not adjourn the matter, that lawyer informed us that they were not willing to represent us on such short notice before the June 18 hearing."

scheduling conflict with the date of the contested hearing, which issue could have been resolved in the context of addressing the motion to adjourn. Under these circumstances, we conclude that the trial court's grant of Escobedo's motion to withdraw, at least when considered in the context of the trial court's refusal to grant an adjournment, was an abuse of discretion. *Withdrawal of Attorney*, 234 Mich App at 432.

## II. ADJOURNMENT

Petitioners also challenge the probate court's denial of their motion for a 30-day adjournment to obtain new counsel. This Court reviews a trial court's decision denying an adjournment for an abuse of discretion. *Soumis v Soumis*, 218 Mich App 27, 32; 553 NW2d 619 (1996). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

The probate court's scheduling order provided that an adjournment was not available unless "by motion if good cause is shown." That is consistent with MCR 2.503(B)(1). Generally, three factors should be considered in determining whether to grant or deny a motion for an adjournment, including: (1) the number of past continuances, (2) the failure of the movant to exercise due diligence, and (3) the lack of injustice to the movant. See *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991); *Roseroot v Muskegon Co*, 123 Mich App 361, 371; 333 NW2d 282 (1983), quoting *Hackett v Connor*, 58 Mich App 202, 206; 227 NW2d 292 (1975).

Again, the probate court in this case granted Escobedo's motion to withdraw just one day before the contested hearing. While petitioners did not dispute that they had actual notice more than a week in advance that Escobedo felt he could no longer assist them, they were unable to retain new counsel so soon before the scheduled contested hearing. The probate court denied the adjournment because respondent's witnesses were present, because the hearing had already been adjourned, and because respondent's counsel indicated that the proceedings were detrimentally affecting respondent. The record does indicate a number of previous adjournments; however, the record does not reflect that petitioners had ever requested and received an adjournment over respondent's objections, or indeed that they were even the driving force behind the adjournments. Rather, at least some of the adjournments were the product of mutual agreement, and the final agreed-upon adjournment was made to allow sufficient time for mediation.

Further, petitioners were diligent both in seeking new counsel and in requesting an adjournment within one day of learning that the court had granted Escobedo's motion to withdraw. Additionally, Escobedo was diligent in previously requesting an adjournment via emergency motion after he learned that prospective counsel had declined to take the case; according to Irene's testimony, this declination was occasioned by the imminent hearing date. The probate court never ruled on Escobedo's motion to adjourn.

Finally, petitioners were substantially hampered by their lack of counsel at the contested hearing, and we conclude that this resulted in an injustice to petitioners. Petitioners' lack of familiarity with the rules of evidence resulted in numerous sustained objections on direct and cross-examination, and appears to have resulted in petitioners essentially abandoning their efforts to elicit testimony in some instances. Further, petitioners repeatedly requested that they be

allowed time to secure witnesses who were not in attendance and had not been subpoenaed, which requests the probate court denied. In some instances, it does not appear that petitioners had a firm grasp on how to prove the legal theories underlying their petitions; for example, Irene's direct examination of Robert Khami attempted to elicit testimony designed to show that respondent had been coerced into changing her estate plan, rather than focusing on whether respondent lacked the capacity to make such decisions.

Considering all of the circumstances, we conclude that there was good cause for an adjournment, and that the probate court erred in declining to grant an adjournment, either in response to Escobedo's motion or in response to petitioners' request at the outset of the hearing, at least in conjunction with the court's grant of Escobedo's motion to withdraw. *Soumis*, 218 Mich App at 32.

Because we have concluded that the probate court abused its discretion as discussed above, we need not address petitioners' other arguments. However, we note that the abuse of discretion resulted from the confluence of two decisions: the granting of the motion to withdraw and the denial of an adjournment. The combined effects of these decisions therefore could have been ameliorated by a different decision on either of the issues, e.g., if the probate court had granted Escobedo's motion to adjourn, it may not have abused its discretion in granting his motion to withdraw. On remand, the probate court should consider the current state of petitioners' representation and fashion a remedy accordingly.

Accordingly, we vacate the circuit court's order in Docket No. 326827 and the probate court's orders in both dockets, and remand to the probate court for further proceedings in accordance with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering