THORN v MERCY MEMORIAL HOSPITAL CORPORATION

Docket No. 277935. Submitted September 10, 2008, at Detroit. Decided December 11, 2008, at 9:10 a.m. Leave to appeal sought.

Marchelle L. Thorn, personal representative of the estate of Laurie A. Greene, deceased, brought a wrongful death action in the Monroe Circuit Court against Mercy Memorial Hospital Corporation and others, alleging that the decedent died as a result of the defendants' medical malpractice. The court, Joseph A. Costello, Jr., J., granted the defendants' motions to exclude the plaintiff's claim for economic damages for loss of services the decedent had provided to her minor children, ruling that the term "including" in MCL 600.2922(6) limited an award of damages in a wrongful death action to only the categories of damages explicitly delineated in the statute and that, because damages for loss of services were not explicitly delineated, the jury could only consider loss of services as noneconomic damages within the context of loss of society and companionship. The plaintiff appealed by leave granted.

The Court of Appeals held:

1. The term "including" in MCL 600.2922(6), when viewed in context, indicates an intent by the Legislature to permit the award of any type of damages, economic and noneconomic, deemed justified by the facts. The statute provides specific examples, not an exhaustive list, of the types of damages available in a wrongful death action.

2. When awarding damages in a wrongful death action based on medical malpractice, there must be an initial determination regarding the full extent of the fair and equitable damages available to the plaintiff and a subsequent reduction or limitation of those damages based on the applicability of the damages cap in MCL 600.1483.

3. The wrongful death act recognizes the availability of damages for loss of services.

4. Damages for loss of services are economic damages and are separate and distinguishable from compensation for the loss of society and companionship. Loss of services is not merely a

component of a claim for the loss of society and companionship or the equivalent of a claim for loss of consortium.

5. The plaintiff's claim for loss of services is a claim for economic damages, which is not subject to the noneconomic damages cap of MCL 600.1483.

Reversed and remanded for further proceedings.

1. TORTS — WRONGFUL DEATH — DAMAGES.

The wrongful death act permits an award of any type of damages, economic or noneconomic, deemed justified by the facts; the act provides specific examples of the types of damages available, not an exhaustive list of the damages available (MCL 600.2922[6]).

2. TORTS — WRONGFUL DEATH — LOSS OF SERVICES — DAMAGES.

Damages for loss of services may be awarded under the wrongful death act; such damages are economic damages that are separate and distinguishable from compensation for the loss of society and companionship or for loss of consortium; economic damages for loss of services are not subject to the cap on damages for noneconomic loss applicable to wrongful death actions based on medical malpractice (MCL 600.1483[1]; MCL 600.2922[6]).

*Turner & Turner, P.C.* (by *Lee I. Turner*) (*Bendure & Thomas*, by *Mark R. Bendure*, of counsel), for Marchelle L. Thorn.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Susan Healy Zitterman* and *Cheryl A. Cardelli*) for Mercy Memorial Hospital Corporation and Blessing B. Nwosu, M.D.

*Tanoury, Corbet, Shaw, Nauts & Essad, P.L.L.C.* (by *William A. Tanoury* and *Anita Comorski*), for Kianoush Khaghany, M.D., and S. Ahadi, M.D., P.C.

*Kerr Russell and Weber PLC* (by *Daniel G. Beyer* and *Joanne Geha Swanson*) for Tanvir Iqbal Qureshi, M.D.

Before: WILDER, P.J., and MARKEY and TALBOT, JJ.

TALBOT, J. In this wrongful death action, plaintiff appeals by leave granted the trial court's order granting defendants' motions to strike plaintiff's claim of economic damages for the loss of household services. We reverse and remand.

## I. BACKGROUND

Plaintiff, the personal representative of the estate of Laurie Ann Greene, deceased, contends that the medical malpractice committed by defendants Mercy Memorial Hospital Corporation (MMHC), Blessing B. Nwosu, M.D., S. Ahadi, M.D., P.C., Kianoush Khaghany, M.D., and Tanvir Iqbal Qureshi, M.D., resulted in the decedent's bleeding to death from the site of a Caesarean section. Plaintiff sought to recover damages pursuant to the wrongful death act (WDA), MCL 600.2922, including the economic value of household services the decedent had provided to her minor children. To develop an estimate of the replacement cost for these household services, plaintiff retained Dr. Nitin Parajpne as an expert in the field of economics. Parajpne opined that the cost to replace the services lost to the decedent's children was $1.45 million.

Defendants filed motions seeking to preclude plaintiff's claim for economic damages for the loss of household services and to exclude testimony by plaintiff's expert. Defendants argued that the language of MCL 600.2922(6) does not specifically list loss of services as a recoverable element of damages. Alternatively, defendants contend that plaintiff's claim for loss of services is merely a factor included in the damages for loss of society and companionship and is, therefore, noneconomic in nature and subject to the damages cap of MCL 600.1483.

Plaintiff responded that the language of MCL 600.2922(6) does not require a claim for damages to fit one of the categories of losses specifically enumerated in the statute. Rather, the statutory language, when considered fully and in context, demonstrates that the types of damages listed are intended to be examples and not limitations on recovery. In addition, plaintiff asserted that damages for loss of services are quantifiable and, therefore, should not be construed as being commensurate with the noneconomic compensation available for the more esoteric damages incurred for loss of society and companionship. Consequently, plaintiff argues that any such damages are not subject to the caps set forth under MCL 600.1483. Citing earlier versions of the WDA, plaintiff noted that the statute has historically permitted recovery for loss of services as a "pecuniary" injury even though the statute did not allow for the recovery of damages for loss of society and companionship until its amendment in 1971. Plaintiff also points to the language of M Civ JI 45.02, which specifically includes "loss of service" as a compensable damage, in addition to those items listed in MCL 600.2922(6).

The trial court granted defendants' motions on the basis of its interpretation of the language of MCL 600.2922(6). The trial court read the term "including" within the statute's language to be one of limitation, restricting recovery to only the categories of damages explicitly delineated. However, the trial court ruled that the jury could consider loss of services as noneconomic damages within the context of loss of society and companionship.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *City of Taylor v Detroit*

*Edison Co,* 475 Mich 109, 115; 715 NW2d 28 (2006). As a preliminary matter, we note that the trial court failed to identify the specific subsection of MCR 2.116 under which it granted defendants' motions. Because the ruling reflects the trial court's determination that plaintiff's claim for damages for loss of services is not recognized or included within the statutory language of MCL 600.2922(6), we review this matter as having been decided pursuant to MCR 2.116(C)(8). *Spiek v Dep't of Transportation,* 456 Mich 331, 338 n 9; 572 NW2d 201 (1998). A dispositive motion premised on MCR 2.116(C)(8) is based on the allegations set forth in the pleadings and operates to test the legal sufficiency of the complaint. *Feyz v Mercy Mem Hosp,* 475 Mich 663, 672; 719 NW2d 1 (2006). "When a challenge to a complaint is made, the motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Id.* Statutory interpretation presents a question of law that this Court also reviews de novo. *Dessart v Burak,* 252 Mich App 490, 494; 652 NW2d 669 (2002).

### III. ARGUMENTS

#### A. STATUTORY LANGUAGE

Defendants initially contend that the wording of MCL 600.2922(6) precludes the consideration of damages for loss of services in a wrongful death action. It is well recognized that legislative intent is determined by first looking at the language of a statute to ascertain and give effect to the intent of the Legislature. *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002). Therefore, to resolve this issue, we must first review the wording of MCL 600.2922, which provides, in relevant part:

(1) Whenever the death of a person, injuries resulting in death, or death as described in section 2922a shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in section 2922a, and although the death was caused under circumstances that constitute a felony.

\* \* \*

(6) In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

Unless defined in the statute, every word or phrase of the statute should be read in accordance with its plain and ordinary meaning. MCL 8.3a.[1] Language of a statute must be applied as it is written and nothing should be read into the meaning of the statutory language that is not within the intent of the Legislature as determined from the statute itself. In other words, "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *DLF Trucking Inc v Bach,* 268 Mich App 306, 310-311; 707 NW2d 606

---

[1] MCL 8.3a states, in relevant part: "All words and phrases shall be construed and understood according to the common and approved usage of the language."

(2005) (quotation marks and citation omitted). The difficulty, which ensues, arises from use of the word "including" in MCL 600.2922(6).

Defendants contend that "including" is a term of limitation and that the list of damages provided following that term is inclusive and restrictive. In contrast, plaintiff asserts that the term "including" demonstrates the intent of the Legislature to provide a nonexhaustive list of examples of the types of damages recoverable under the WDA. Unfortunately, merely resorting to a dictionary definition of this term is not dispositive regarding the meaning of the statutory language. As previously noted by this Court, "[w]hen used in the text of a statute, the word 'includes' can be used as a term of enlargement or limitation, and the word in and of itself is not determinative of how it is intended to be used." *Rickwalt v Richfield Lakes Corp,* 246 Mich App 450, 469; 633 NW2d 418 (2001) (quotation marks and citation omitted). In accordance with the recognized rules of statutory interpretation,

"[a]s far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." ... [I]n defining particular words in statutes, we must "consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " [*Herman v Berrien Co,* 481 Mich 352, 366; 750 NW2d 570 (2008) (citations omitted).]

Consequently, we must ascertain the meaning of this term by examining its use and placement within the context of the statute.

The word "including" is directly preceded in the statutory subsection by the following language: "In every action under this section, the court or jury *may*

*award damages* as the court or jury *shall consider fair and equitable, under all the circumstances . . . ."* (Emphasis added.) When viewed in context, rather than as a solitary term, the word "including" indicates an intent by the Legislature to permit the award of any type of damages, economic and noneconomic, deemed justified by the facts of the particular case. As such, the term "including" should be construed as merely providing specific examples of the types of damages available, and not an exhaustive list. To view the term in the limiting manner urged by defendants would result in an internal contradiction. Interpreted in the manner suggested by defendants, the statutory language would mandate both the award of damages "consider[ed] fair and equitable, under all the circumstances" while simultaneously limiting a plaintiff's recovery only to those items specified in the list following the term "including." We find that such an interpretation conflicts with our rules of statutory interpretation that preclude construing terms beyond their "plain and ordinary meaning" and would render the expansive language preceding use of the term either "surplusage" or "nugatory." *Ammex, Inc v Dep't of Treasury,* 273 Mich App 623, 648-649; 732 NW2d 116 (2007).

As additional support for their interpretation of the statute, defendants cite previous rulings involving MCL 600.2922(6) indicating that only those damages specifically delineated in MCL 600.2922(6) can be recovered in a wrongful death action. In *Tobin v Providence Hosp,* 244 Mich App 626, 638-639; 624 NW2d 548 (2001), while not engaging in an analysis of the statute, this Court ruled, "In a wrongful death action, MCL 600.2922; MSA 27A.2922 limits damages to [those categories specifically enumerated under MCL 600.2922(6)]." More recently, when discussing statutory and common-law limitations applicable to "the under-

lying claim" in a wrongful death action, our Supreme Court, in a minimal and cursory statement, indicated that "MCL 600.2922(6) sets forth the damages available in wrongful death actions . . . ." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 90; 746 NW2d 847 (2008).[2]

By extrapolation, defendants also rely on rulings precluding awards for exemplary damages premised on the absence of language in MCL 600.2922(6) permitting this type of recovery. For example, in *Fellows v Superior Products Co*, 201 Mich App 155; 506 NW2d 534 (1993), this Court determined that "exemplary damages are not recoverable in a wrongful death action" in light of prior rulings of the Michigan Supreme Court, which construed MCL 600.2922 as " 'provid[ing] the

---

[2] Although we note that this Court is "not bound to follow a federal court's interpretation of state law," *Doe v Young Marines of the Marine Corps League*, 277 Mich App 391, 399; 745 NW2d 168 (2007), this narrow construction of MCL 600.2922 has continued in the federal courts. By way of example, in *Frontier Ins Co v Blaty*, 454 F3d 590, 598-599 ( CA 6, 2006), the court, citing MCL 600.2922 in applying "Michigan's civil damages laws" to address a complaint seeking relief for an infant's "loss of enjoyment of life" caused by death, stated, in relevant part:

> In Michigan, "[t]here is no common-law right to recover damages for a wrongfully caused death." As a statute in derogation of the common law, the wrongful death act "must be narrowly construed so that only those damages explicitly provided for in the act are recoverable."

> The wrongful death act provides for three categories of damages: (1) "reasonable medical, hospital, funeral, and burial expenses for which the estate is liable," (2) "reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death," and (3) "damages for the loss of financial support and the loss of the society and companionship of the deceased." [Citations omitted.]

See, also, *Brereton v United States,* 973 F Supp 752, 755 (ED Mich, 1997); *Kemp v Pfizer, Inc,* 947 F Supp 1139, 1145 (ED Mich, 1996).

exclusive remed[y] for those injuries which result in death' " and concluded that the statute " 'does not provide for punitive or exemplary damages.' " *Fellows, supra* at 157-158, quoting *In re Disaster at Detroit Metro Airport*, 750 F Supp 793, 805 (ED Mich, 1989), citing *Endykiewicz v State Hwy Comm*, 414 Mich 377, 387-388; 324 NW2d 755 (1982),[3] and *Courtney v Apple*, 345 Mich 223, 228; 76 NW2d 80 (1956).

Reviewing the caselaw defendants proffer, we conclude that these rulings are primarily dicta and are not dispositive of the issue presented in this litigation. Although defendants are correct regarding the preclusion of exemplary damages under the WDA, exemplary damages are not precluded on the basis that the wording of the statute fails to specifically reference them. Rather, exemplary damages are precluded solely because these damages "will not be awarded to compensate a purely pecuniary grievance susceptible to full and definite monetary compensation." *Jackson Printing Co, Inc v Mitan*, 169 Mich App 334, 341; 425 NW2d 791 (1988). Consequently, the basis for the preclusion of exemplary damages cannot be generalized or extrapolated to a claim of loss of services.

In contrast to the caselaw relied on by defendants, we note that our Supreme Court has issued numerous rulings expressing an expansive interpretation of the damages available under the WDA. By way of example, when interpreting the survivor benefits provisions of the no-fault act, MCL 500.3108, the Michigan Supreme Court found guidance in MCL 600.2922. Specifically, the Court stated, in relevant part:

---

[3] Overruled in part, *Wesche, supra* at 91.

Thus, it appears that the Legislature's use of the language "contributions of tangible things of economic value" in § 3108 indicates an intent that survivors' loss benefits should at least roughly correspond to economic loss damages recoverable under our wrongful death act. MCL 600.2922; MSA 27A.2922.

Under our wrongful death act, a survivor's recoverable *economic losses include*, at a minimum, *the loss of financial support* from the deceased *and the loss of services* that the survivor would have received from the deceased had he lived. . . .

To the extent that survivors' loss benefits are intended to be analogous to wrongful death act economic loss damages, it is important to keep in mind that wrongful death act damages focus upon the financial loss actually incurred by the survivors as a result of their decedent's death. [*Miller v State Farm Mut Automobile Ins Co*, 410 Mich 538, 560-561; 302 NW2d 537 (1981) (emphasis added and omitted).]

See, also, *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172, 179-180; 617 NW2d 735 (2000). Similarly, in *Shinholster v Annapolis Hosp*, 471 Mich 540, 545-546; 685 NW2d 275 (2004), the Court discussed the effect of MCL 600.6304, which permits consideration of a plaintiff's own pretreatment negligence to offset a defendant's fault in a claim for medical malpractice and the applicability of the damages cap, MCL 600.1483, to a wrongful death action. In reviewing the scope of MCL 600.1483, the Court stated:

[W]e believe that the text of the wrongful death act, MCL 600.2922(1), (2), and (6), provides additional support for our understanding of § 1483. . . . [W]hile we agree with the Chief Justice that the Legislature is free to make "a policy decision that the survivors of dead medical malpractice victims are entitled to lesser damages than are living medical malpractice victims who are suffering from one of the three types of permanent conditions enumerated in

[§ 1483]," we see no indication in the statute that the Legislature, in fact, made such a decision; rather, we believe that the Legislature made a quite contrary policy decision in § 2922(1), (2), and (6) by *permitting a decedent's estate to recover everything* that the decedent would have been able to recover had she lived. [*Shinholster, supra* at 564 (citation omitted; emphasis added and omitted).]

In *Jenkins v Patel*, 471 Mich 158; 684 NW2d 346 (2004), our Supreme Court specifically addressed the compatibility of the WDA, MCL 600.2922, and the noneconomic damages cap, MCL 600.1483, in medical malpractice. The Court noted:

Clearly, the wrongful death act is not the only act that is pertinent in a wrongful death action. "The mere fact that our legislative scheme requires that suits for tortious conduct resulting in death be filtered through the so-called 'death act', MCL 600.2922; MSA 27A.2922, does not change the character of such actions except to *expand the elements of damage available.*" That is, a wrongful death action grounded in medical malpractice is a medical malpractice action in which the plaintiff is allowed to collect damages related to the death of the decedent. [*Jenkins, supra* at 165-166 (citation omitted; emphasis added).]

The Court further indicated that the existence of a damages cap did not impede or constrain a jury's determination of damages. Specifically:

Although § 1483 reduces the damages awarded by the trier of fact, it does nothing to impinge upon the trier of fact's ability to determine an amount that is "fair and equitable." That is, § 1483 does not diminish the ability of the trier of fact to render a fair and equitable award of damages; it merely limits the plaintiff's ability to recover the full amount awarded in cases where the cause of action is based upon medical malpractice and the amount exceeds the cap. [*Jenkins, supra* at 172.]

The clear implication of these rulings is that when awarding damages in a wrongful death action based on medical malpractice there must be (a) an initial determination regarding the full extent of damages available to the plaintiff deemed "fair and equitable" and (b) a subsequent reduction or limitation of those damages on the basis of the applicability of MCL 600.1483.[4]

Historically:

> "The present wrongful death act is an amalgamation of the remedies previously existing under the wrongful death and survival acts. . . . The language of the statute requiring that the decedent must have been able to maintain the action, 'if death had not ensued,' has remained in the act throughout its legislative history." [*In re Haque*, 237 Mich App 295, 306; 602 NW2d 622 (1999) (citations omitted).]

As such, "the wrongful-death act is essentially a 'filter' through which the underlying claim may proceed." *Wesche, supra* at 88, citing *Hardy v Maxheimer*, 429 Mich 422, 439; 416 NW2d 299 (1987). This is consistent with other statutory provisions pertaining to the WDA, such as MCL 600.2921, which states: "All actions and claims survive death." See, also, *Hawkins v Regional Medical Laboratories, PC*, 415 Mich 420, 434; 329 NW2d 729 (1982).

This Court in *Hebert v Cole*, 115 Mich App 452, 456; 321 NW2d 388 (1982), in discussing the history of the WDA, recognized that "[a]fter the 1971 amendment and *Smith* [*v Detroit*, 388 Mich 637; 202 NW2d 300 (1972)], it has been *unquestioned* that the wrongful death act *permits recovery for the loss of services and companionship*." (Emphasis added). Citing the manda-

---

[4] "Only after the court or jury has, in its discretion, awarded damages as it considers fair and equitable does the court, pursuant to [MCL 6304(5)], apply the noneconomic damages cap of § 1483." *Jenkins, supra* at 172.

tory language of MCL 600.2922(1) contained at that time that "all actions for a wrongful death 'shall be brought only under this section,' " the *Hebert* Court noted that this requirement necessitated the bringing of an action for "loss of services" under the WDA, and not as a separate action, *Hebert, supra* at 457.

Defendants' position is also contrary to caselaw involving earlier versions of the WDA, which did not recognize loss of society and companionship but did permit recovery for loss of services as pecuniary damages. In addressing a parent's right to recover for the loss of a minor child, our Supreme Court held:

> " 'Only pecuniary damages can be recovered in such actions as this. Nothing can be given as solace or for bereavement suffered. . . . It is not indispensable that there should be proof of actual services of pecuniary value rendered to next of kin, nor that any witness should express an opinion as to the value of services that may have been or might be rendered. Where the deceased was a minor, and left a father who would have been entitled to his services had he lived, the law implies a pecuniary loss, for which compensation, under the statute, may be given.' " [*Courtney, supra* at 244, quoting *Black v Michigan C R Co*, 146 Mich 568, 574; 109 NW 1052 (1906), quoting *City of Chicago v Hesing*, 83 Ill 204, 206-207 (1876).]

Similarly, in *Thompson v Ogemaw Co Bd of Rd Comm'rs,* 357 Mich 482, 488; 98 NW2d 620 (1959), the Court interpreted the WDA and held, "The statute and Michigan case law interpreting it allow consideration of loss of services of a minor in determining pecuniary injury of a parent." In *Wycko v Gnodtke,* 361 Mich 331, 339; 105 NW2d 118 (1960), the Court recognized that "[t]he pecuniary value of a human life is a compound of many elements" and that "an individual member of a family has a value to others as part of a functioning social and economic unit." Relying on *Wycko* as author-

ity, this Court recognized that "adult children may recover from the tort-feasor for the unlawful death of a parent where loss of love, companionship and guidance have been proven," and indicated:

> It has been the law in Michigan for a number of years that in an action under the death act, as amended, for damages arising because of the death of the wife, the husband is entitled to recovery for the loss of her services. . . .
>
> . . . The same elements of pecuniary injury plus loss of services of the wife . . . were also submitted as proper to be considered by the jury as a loss to the husband in assessing damages. [*Westfall v Venton,* 1 Mich App 612, 621-622; 137 NW2d 757 (1965).]

Earlier, in *Zolton v Rotter,* 321 Mich 1, 10; 32 NW2d 30 (1948), the Court addressed the scope of pecuniary damages available under the WDA and ruled, in relevant part:

> Although, under the death act . . . recovery is limited to those persons entitled to support from decedent, recovery is not limited to the amount of support actually received. The amended act is at least as broad in protecting recovery on behalf of minor children as the original act. And in spite of the rule just stated, a husband is still entitled to recovery for loss of his wife's services, apart from any earning capacity which she may or may not have had. [Citations and emphasis omitted.]

As discussed earlier in this opinion, the evolution of the WDA demonstrates that the statute has consistently been found to recognize the availability of damages for loss of services and that the various amendments of the statute have served to expand, rather than limit, the damages available to litigants.

Procedurally, defendants also ignore the fact that the WDA does not comprise an independent cause of action. In overruling *Endykiewicz,* the Court determined

that "*Endykiewicz* was incorrectly decided because it erroneously treated a wrongful-death claim as a 'new' cause of action rather than a continuation of the decedent's underlying claim." *Wesche, supra* at 91 n 13. Specifically, the Court recognized:

> "[S]ince 1846 the law in Michigan has evolved to the point where it may now be held that the right to recovery for wrongful death 'survives by law.' *Consequently, a wrongful death action will no longer be regarded as one created at the time of death, but as one that 'survives by law.'* " [*Id.* at 89 (citation omitted; emphasis in original).]

As a result, the Court has ruled that "any statutory or common-law limitations on the underlying claim apply to the wrongful-death action." *Id.* Because the WDA is derivative in nature, *id.* at 90, 91 n 13, the result urged by defendants is inconsistent with the directives of our Supreme Court. For symmetry and continuity, if "the limitation on damages . . . must apply in [a] wrongful-death action," so too must the damages that are available in the underlying claim be recognized. *Id.* at 91. Consequently, the damages listed in MCL 600.2922(6) cannot be construed as exhaustive.

Further, when viewed in the context of the statutory scheme for medical malpractice, defendants' position is logically inconsistent with MCL 600.1483(1), which increases the cap for noneconomic damages when a more serious or permanent and irreparable injury is incurred.[5] Defendants assert that the most serious injury, which results in death, serves to restrict and

---

[5] MCL 600.1483(1) raises the damages cap for medical malpractice from $280,000 to $500,000 for noneconomic loss when the injury incurred results in (a) "a total permanent functional loss of 1 or more limbs" because of brain or spinal cord injury, (b) "permanently impaired cognitive capacity," or (c) "permanent loss of or damage to a reproductive organ resulting in the inability to procreate."

prohibit claims that would be compensable had the individual survived. Common sense would dictate the opposite—the more egregious the injury, the greater the damages. Any other result would be contrary to the history of litigation in this area of the law, which sought to assure that wrongdoers would be held accountable to their victims. As discussed by Justice SMITH in his dissent in *Courtney* reviewing the inequities of the common law and the historical development of actions permitting compensation for a wrongful death:

> Despite the reasoning of the common-law logicians, our people could not understand this: A wrongdoer who brought his victim to the very brink of human dissolution would have to respond in damages to the full extent of the injury. But if he took the final step and plunged his victim into the abyss, he obtained absolution from damages. No amount of talk about the sanctity, the incalculable value, of human life could justify a result which denied the very value the words proclaimed. [*Courtney, supra* at 239 (SMITH, J., dissenting).]

We find it inconceivable, as argued by defendants, that a child would be precluded from recovering damages for loss of services stemming from the parent-child relationship following the harsher and irreversible outcome of a parent's death, but that these same damages would be recoverable by a parent who is injured but survives. Such a position is inconsistent with the stated purpose of the WDA, MCL 600.2921, to assure that "[a]ll actions and claims survive death," and contrary to the language of MCL 600.2922(1). The statutory language leads to the inescapable conclusion that the intervention of death neither limits nor precludes the type of damages that could have been recovered by the person had the person survived the injury. The cost of replacement services is a well-recognized component of damages that is recoverable by a person injured because

of medical malpractice. Consequently, because the claim survives a decedent's death, a claim for loss of services must also be available in an action for wrongful death. In light of the statutory language and the cases cited earlier in this opinion there is no valid argument that a claim for loss of services is precluded by statutory language.[6]

Finally, with regard to the interpretation of MCL 600.2922(6), we address the trial court's rejection of plaintiff's argument regarding the reference to "loss of service" in M Civ JI 45.02 in support of its inclusion as an element of damages. Although we recognize that these standard instructions are not given the force and effect of the court rules, the instructions do constitute the work of a committee created by our Supreme Court and, therefore, are entitled to some level of deference. *Taylor v Michigan Power Co*, 45 Mich App 453, 457; 206 NW2d 815 (1973). Inclusion of "loss of service" within this instruction is consistent with our Supreme Court's determination that the existence of the medical malpractice damages cap delineated in MCL 600.1483 "does not diminish the ability of the trier of fact to render a fair and equitable award of damages; it merely limits the plaintiff's ability to recover the full amount awarded in cases where the cause of action is based upon medical malpractice and the amount exceeds the cap." *Jenkins, supra* at 172.

### B. LOSS OF SOCIETY AND COMPANIONSHIP

Unwilling to rely solely on a statutory language argument, defendants also assert an alternative, and

---

[6] We do not intend this ruling to address defendants' ancillary assertion regarding the admissibility of testimony and evidence proffered by plaintiff's expert in support of this damages claim. The admissibility of the challenged expert's testimony is for the trial court to determine.

seemingly contradictory, position. Defendants contend that damages for loss of services are available but fall strictly under the umbrella of loss of society and companionship. Defendants argue that loss of society and companionship is defined in the same manner, and encompasses the same criteria or elements, as loss of consortium and, as such, is noneconomic in nature and, therefore, subject to the damages cap of MCL 600.1483. Defendants' characterization is inaccurate and oversimplifies these terms or concepts.

While loss of society and companionship and loss of consortium share certain components and have often been erroneously used interchangeably, defendants are incorrect in asserting that the terms are equivalent in meaning. Loss of consortium is typically construed to encompass two aspects of the marital relationship—the loss of support and the loss of society. " 'Loss of consortium technically means the loss of conjugal fellowship. However, it is legally recognized as including loss of society, companionship, service, and all other incidents of the marriage relationship.' " *Kucken v Hygrade Food Products Corp,* 51 Mich App 471, 474-475; 215 NW2d 772 (1974), quoting *Washington v Jones,* 386 Mich 466, 472; 192 NW2d 234 (1971), citing *Montgomery v Stephan,* 359 Mich 33, 36; 101 NW2d 227 (1960). Although loss of consortium includes loss of services and loss of society as components, that does not make the concepts interchangeable or determine whether they are economic or noneconomic in nature.

In distinguishing between a claim for loss of consortium and a claim for loss of society under the WDA, " 'courts have consistently treated loss of consortium not as an item of damages, but as an independent cause of action . . . .' " *Burchett v Rx Optical,* 232 Mich App 174, 179; 591 NW2d 652 (1998), quoting *Eide v Kelsey-*

*Hayes Co,* 431 Mich 26, 29; 427 NW2d 488 (1988). Loss of consortium constitutes a broader or more encompassing claim focused on allowing recovery for the loss incurred for a family member's own relationship with the injured individual and is specifically precluded under the WDA. This Court recognized the distinctions between an action for loss of consortium and a claim for loss of society and companionship in *Jones v McCullough,* 227 Mich App 543, 546; 576 NW2d 698 (1998), stating, "Such damages are not the same as common-law loss of consortium damages, which is why loss of consortium damages are not treated the same as loss of society and companionship damages allocated in a wrongful death action." *Id.* at 546 (citation omitted). Rather, the dispositive issue is whether loss of services damages constitute an economic or noneconomic loss.

Because an action under the WDA "grounded in medical malpractice is a medical malpractice action in which the plaintiff is allowed to collect damages related to the death of the decedent," *Jenkins, supra* at 165-166, to determine whether loss of services comprises an economic or noneconomic element of damages, we look to MCL 600.1483 to discern the nature and character of the damages available to plaintiff. MCL 600.1483(2) mandates that "[i]n awarding damages in an action alleging medical malpractice, the trier of fact shall itemize damages into damages for economic loss and damages for noneconomic loss." Our Supreme Court has already determined that WDA cases arising from medical malpractice permit a plaintiff to receive "damages awarded . . . for loss of society and companionship" and that these damages are "clearly noneconomic." *Jenkins, supra* at 168. MCL 600.1483(3) defines "noneconomic loss" as "damages or loss due to pain, suffering, inconvenience, physical impairment, physical dis-

figurement, or other noneconomic loss." However, there is no commensurate provision defining the types of damages encompassed by MCL 600.1483 for economic loss.

Although MCL 600.1483 does not provide a definitive answer regarding whether damages for loss of services are to be characterized as economic or noneconomic, we are guided by other statutory provisions. At the outset, we acknowledge that the Legislature is presumed to be aware of existing law, and we cannot assume that the Legislature inadvertently omitted language from one statute that is present or placed in another. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 210; 501 NW2d 76 (1993). However, even though "the terms of one statute are not dispositive in determining the meaning of another, especially if the statutes were not designed to effectuate a common result, the terms of one statute may be taken as a factor in determining the interpretation of another statute." *Linton v Arenac Co Rd Comm,* 273 Mich App 107, 118; 729 NW2d 883 (2006). See, also, *Wessels v Garden Way, Inc,* 263 Mich App 642, 651; 689 NW2d 526 (2004) ("Just because the Legislature utilized different, and arguably more precise, language in another statute, does not mean that the clear but different language used in these statutes means something substantively different.").

While MCL 600.1483 fails to define what factors comprise an economic loss or fully delineate the components of a noneconomic loss, other sections of the Revised Judicature Act, MCL 600.101 *et seq.,* pertaining to product liability actions resulting from injury or death provide guidance. The Legislature, in MCL 600.2945, specifically defined those terms:

> (c) "Economic loss" means objectively verifiable pecuniary damages arising from medical expenses or medical

care, rehabilitation services, custodial care, loss of wages, loss of future earnings, burial costs, loss of use of property, costs of repair or replacement of property, costs of obtaining substitute domestic services, loss of employment, or other objectively verifiable monetary losses.

* * *

(f) "Noneconomic loss" means any type of pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, loss of society and companionship, loss of consortium, injury to reputation, humiliation, or other nonpecuniary damages.

We note that the definition of "economic loss" is consistent with prior versions of the WDA, which focused on pecuniary damages. The definition of "noneconomic loss" under this statutory provision parallels the historical progression of the WDA, which initially precluded recovery for nonpecuniary damages, such as loss of society and companionship, grief, and mental anguish. The definition in MCL 600.2945(f) is also consistent with the definition of "noneconomic loss" in MCL 600.1483(3).

Although the damages recoverable under the WDA are determined by the underlying action, it is nonsensical to construe the nature or character of those damages as being variable depending on the theory of liability. What comprises an economic loss in a medical malpractice action must be the same as what constitutes an economic loss under a different theory of tort liability. To find otherwise would be not only confusing, but also would lead to inconsistent and inequitable results when an injury is fatal.

Finally, in *Lamson v Martin*, 182 Mich App 233; 451 NW2d 601 (1990), this Court addressed the damages instructions provided to the jury for computing

future damages in a wrongful death action. The plaintiff had requested the inclusion of additional language in the instructions for future damages regarding loss of companionship. In determining that the trial court committed error by failing to give the requested instruction, this Court ruled, in relevant part:

> In giving SJI2d 45:02, the standard instruction for damages resulting from wrongful death, the trial court included as elements both the loss of services and the loss of companionship. However, in giving the future damages instruction, SJI2d 53:02, the trial court listed only the former element. Since the absence of the latter element is conspicuous, we doubt that the jury, on their own, would have included it in calculating future damages. Moreover, it is not reasonable to conclude that the jury considered loss of companionship to be covered by the reference to "other benefits" in the instruction. Since this reference was coupled to the term "services," i.e., "services *or* other benefits", we conclude that it is more reasonable that the jury considered the reference to be limited to financial benefits. [*Lamson, supra* at 236-237 (emphasis in original).]

Clearly, this Court has recognized not only the availability of damages for loss of services, but also acknowledged these damages as economic and separate and distinguishable from compensation for loss of society or companionship.

IV. CONCLUSION

We conclude that the statutory language of MCL 600.2922(6) does not preclude plaintiff's claim for damages for loss of services. Further, we reject defendants' assertion that loss of services is merely a component of a claim for loss of society and companionship or the equivalent of a claim for loss of consortium. As a result,

plaintiff's claim for loss of services comprises a claim for economic damages, which is not subject to the damages cap of MCL 600.1483.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.