*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ESTATE OF GARYLYN S. LANGELL, by
DOUGLAS S. TOUMA, Personal Representative,

      Plaintiff-Appellee/Cross Appellant,

v

MCLAREN PORT HURON, formerly known as
PORT HURON HOSPITAL,

      Defendant-Appellee/Cross Appellee,

and

PHYSICIAN HEALTHCARE NETWORK, P.C. and
MICHAEL PAUL, M.D.,

      Defendants-Appellants/Cross
      Appellees,

and

PARTRIDGE FAMILY PHYSICIANS, P.C. and
TIMOTHY HORRIGAN, M.D.,

      Defendants.

UNPUBLISHED
July 30, 2020

No. 347274
St. Clair Circuit Court
LC No. 15-002567-NH

Before: MARKEY, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

      Defendants Michael Paul, M.D. and his medical practice, Physician Healthcare Network, P.C. (PHN), (collectively, the Paul defendants) appeal by right the judgment entered against them and in favor of plaintiff, the personal representative of the estate of Garylyn S. Langell (the decedent), following a jury trial. Plaintiff cross-appeals, asserting that if this Court reverses the

-1-

judgment against the Paul defendants, we should also find that the trial court erred by imposing a limitation on future damages and by directing a verdict in favor of defendant McLaren Port Huron Hospital (McLaren).[1] We affirm in the Paul defendants' appeal and therefore need not address the issues raised in plaintiff's cross-appeal.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On September 16, 2011, the decedent went to the emergency room (ER) at McLaren, complaining of chest and back pain. Dr. Paul and PHN were contracted to perform emergency medicine services in McLaren's ER, and Dr. Paul was working in the ER that night. Dr. Paul examined the decedent and found that her pain was "reproducible," meaning that it worsened when the painful areas were palpated. The decedent's blood pressure was 155 over 86. Dr. Paul concluded from the decedent's history, physical examination, and vital signs that she was suffering from a muscle strain in her back. He prescribed a muscle relaxant and pain medication. The decedent was discharged later that morning and followed up the next day with her family physician, Dr. Timothy Horrigan.

On September 18, 2011, the decedent was found dead in her apartment. Her cause of death was determined to be aortic dissection, or a tear in her aortic artery. An aortic dissection begins with a tear in the innermost of the three arterial layers of the aorta. If it is not timely treated, the tear will progress through the outer layers of the artery, causing severe internal bleeding and death.

At the time of her death, the decedent was living apart from her husband, Scott Langell. The decedent was on disability leave from her employment because of depression. The underlying cause of her depression and marital decline was the death of her 15-year-old daughter in February 2011.

Plaintiff brought a wrongful-death medical malpractice action against defendants. Relevant to this appeal, plaintiff alleged that Dr. Paul had breached the applicable standard of care for an emergency medicine physician by failing to order a CT scan or other diagnostic test to rule out an aortic dissection. Plaintiff alleged that PHN was vicariously liable for Dr. Paul's malpractice, and that McLaren was vicariously liable for the Paul defendants' malpractice. The trial court denied the Paul defendants' motion in limine to exclude evidence of the decedent's economic wage-loss damages, but restricted plaintiff's evidence of economic damages to the six-year period following the decedent's death. At trial, the trial court granted McLaren's motion for a directed verdict on the ground that plaintiff had failed to establish a genuine issue of material fact regarding whether the Paul defendants were McLaren's ostensible agents for purposes of establishing vicarious liability. After granting McLaren's motion, the trial court inquired of the parties whether they wanted the court to inform the jury of the directed verdict. The Paul defendants did not respond. The trial court decided not to inform the jury of the directed verdict

---

[1] The jury returned a verdict of no cause of action with regard to defendants Timothy J. Horrigan, M.D. and Partridge Family Physicians, P.C.; neither the Paul defendants nor plaintiff challenge this aspect of the verdict on appeal. The trial court granted a directed verdict to McLaren, as discussed later in this opinion.

or to give an instruction concerning the disposition of plaintiff's claims against McLaren. The jury found that Dr. Paul was liable for malpractice. It awarded plaintiff $490,000 in economic damages and $3,500,000 in noneconomic damages against the Paul defendants.[2] The Paul defendants moved for a new trial, judgment notwithstanding the verdict (JNOV), or remittitur (i.e., reduction of the amount of the judgment), raising the same issues they raise on appeal. The trial court denied the motion. This appeal and cross-appeal followed.

## II. JURY INSTRUCTIONS

The Paul defendants argue that the trial court erred by failing to provide an instruction to the jury explaining why McLaren was absent from the case. We disagree. Because the Paul defendants never requested that the jury be instructed regarding the reason for McLaren's absence, this issue is unpreserved. *Heaton v Benton Constr Co*, 286 Mich App 528, 537; 780 NW2d 618 (2009). We review unpreserved claims of instructional error for plain error affecting substantial rights. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 544-545; 854 NW2d 152 (2014).

The Paul defendants posit that without information about why McLaren was absent from the case, the jury likely speculated that McLaren had admitted the Paul defendants' liability and had reached a settlement with plaintiff. The Paul defendants rely on *Brewer v Payless Stations, Inc*, 412 Mich 673; 316 NW2d 702 (1982), in support of their argument that the trial court should have instructed the jury about the reason for McLaren's absence from the case. In *Brewer*, the plaintiff brought suit against a gas station and an automobile manufacturer, alleging that the negligent design of the station and the negligent design of an automobile fuel tank caused a vehicle collision and fire, respectively. Before trial, the plaintiff settled with the manufacturer. *Id*. at 674. The plaintiff moved to exclude any reference to the settlement at trial. The trial court denied the motion, but this Court reversed. *Id*. at 674-675. Our Supreme Court affirmed, concluding that "[i]f facts such as here before us have or should have no bearing upon either liability or ultimate damages, there appears to be little cause to burden the jury with the added duty of calculating a liquidated settlement into its deliberations." *Id*. at 679. The Court then stated:

> Therefore, in all cases which commence trial after the date of this decision, the policy in Michigan shall be: When there is no genuine dispute regarding either the existence of a release or a settlement between plaintiff and a codefendant or the amount to be deducted, the jury shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise. Following the jury verdict, upon motion of the defendant, the court shall make the necessary calculation and find the amount by which the jury verdict will be reduced. [*Id*.]

This Court subsequently applied the *Brewer* rule to a wrongful-death case in which the trial court had instructed the jury that two other defendants had been dismissed from the case before trial. See *Clery v Sherwood*, 151 Mich App 55; 390 NW2d 682 (1986). This Court concluded that the trial court had erred by doing so, stating that "the policy in *Brewer* must be applied in this case

---

[2] The award of noneconomic damages was later reduced to $455,500, pursuant to the statutory cap on noneconomic damages, MCL 600.1483.

where the partial facts recited to the jury are of little, if any, probative value and where they are subject to considerable, though incalculable, prejudice." *Id*. at 62.

More recently, our Supreme Court clarified that "*Brewer* does not prohibit *any* reference to a party, but merely prohibits mentioning the existence of a settlement or its amount . . . ." *Barnett v Hidalgo*, 478 Mich 151, 171; 732 NW2d 472 (2007). The Court further held that "*Clery* merely stands for the proposition that the parties may not inform the jury that a nonparty was *dismissed* from the lawsuit." *Id*. at 172.

*Brewer* and *Clery* did not require the trial court to explain the reason for McLaren's absence from the case. The Paul defendants argue that the underlying concern in *Brewer* and *Clery* was that if the jury knew there was a settlement, it would speculate about the reason for the settlement. The Paul defendants assert that this concern is implicated here because the jury could have concluded, despite having no information that a settlement existed, that McLaren had settled with plaintiff because it knew that Dr. Paul had been negligent. We disagree with this reasoning. In *Brewer* and *Clery*, the courts were concerned that providing the jury with information about why other defendants in the case had been dismissed before trial, and specifically with information concerning settlements, would be of little probative value and would carry the risk of prejudice. In this case, although the jury was aware that McLaren was a party to the case and was defending itself in the action, the trial court was not required by *Brewer* or *Clery* to explain to the jury the reason for its absence, and the risk of prejudice from providing additional information would still have been present; for example, had the trial court explained that McLaren had not settled plaintiff's claims against it, but was dismissed for lack of liability, the jury may well have speculated about what McLaren's lack of liability meant for the remaining defendants, rather than evaluating the evidence against them on its own merits. The Paul defendants have not demonstrated plain error. *Landin*, 305 Mich App at 544-545.[3]

## III. DIRECTED VERDICT

The Paul defendants also argue that the trial court erred by granting McLaren's motion for a directed verdict. We agree with plaintiff that the Paul defendants lack appellate standing to raise this issue because they are not an "aggrieved party" with respect to this issue.

Whether a party has standing is a question of law that we review de novo. *Groves v Dept' of Corrections*, 295 Mich App 1, 5; 811 NW2d 563 (2011). "The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010). "Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. "[S]tanding refers to the right of a party plaintiff *initially* to invoke the power of the court to adjudicate a claimed injury in fact. . . . In appeals, however, a similar interest is vindicated by the requirement that the party

---

[3] We note, although we do not decide the issue on this ground, that the Paul defendants' silence in the face of the trial court's explicit question regarding whether the jury should be informed of McLaren's absence, in conjunction with their argument on appeal, raises the specter of an appellate parachute. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 96; 693 NW2d 170 (2005).

seeking appellate relief be an 'aggrieved party' under MCR 7.203(A) and our case law." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). "An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power." *Id*. at 291-292.

The Paul defendants have failed to establish any particularized injury arising from the trial court's decision to direct a verdict in favor of McLaren. The Paul defendants never asserted any cross-claim against McLaren, and they did not advance any theory that would have allowed them to shift any portion of their liability to McLaren. Plaintiff's theory of the case was that McLaren was vicariously liable for the Paul defendants' negligence, not that it was directly liable in whole or in part for the decedent's injury or death. McLaren's continued presence in the case had no relevance to a determination of the Paul defendants' liability. Further, because any liability of McLaren would be vicarious, it would be entitled to indemnification for any damages it paid as a result of Dr. Paul's negligence. "Generally, indemnity is available to a party who faces vicarious liability for the negligent act of another." *Sawka v Prokopowycz*, 104 Mich App 829, 833; 306 NW2d 354 (1981). Consequently, the Paul defendants would not benefit if plaintiff were able to collect a judgment from McLaren as well as from the Paul defendants, because McLaren would be entitled to indemnification from the Paul defendants.

The Paul defendants argue that their own interests were impaired because McLaren might have presented a more effective defense, but they do not explain how McLaren could have defended the Paul defendants more effectively than they defended themselves. They do not, for example, indicate that McLaren had access to any witnesses or documents that were unavailable to the Paul defendants. The speculative possibility that the jury might have been persuaded differently by McLaren is not a "concrete and particularized injury" conferring standing on the Paul defendants to challenge the directed verdict in favor of McLaren. *Federated Ins*, 475 Mich at 291-292. Accordingly, the Paul defendants lack standing to challenge that decision on appeal.[4]

## IV. WAGE-LOSS DAMAGES

The Paul defendants also argue that the trial court erred as a matter of law by permitting the jury to award damages for the decedent's lost wages, and by denying its motion for JNOV on the issue of whether the evidence supported an award of damages for wage loss by the decedent. We disagree. We review de novo as a question of law whether damages for a decedent's lost wages are recoverable as economic damages in a wrongful-death action .*Coble v Green*, 271 Mich App 382, 388; 722 NW2d 898 (2006). We also review de novo a trial court's decision on a motion for JNOV. *Id*. at 389. Finally, we review de novo issues of statutory interpretation. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010).

---

[4] In his cross-appeal, plaintiff also challenges the trial court's decision to direct a verdict in favor of McLaren. However, plaintiff's challenge is contingent; plaintiff only argues that his claim against McLaren should be reinstated if we reverse the judgment against the Paul defendants on any ground. Because we are affirming the trial court in the main appeal, this contingency has not come to pass and accordingly we will not consider plaintiff's arguments on this issue.

The Paul defendants argue that damages for a decedent's lost wages are not recoverable in a wrongful-death action as a matter of law. We disagree. The medical malpractice act provides for recovery of economic loss, defined as "objectively verifiable pecuniary damages arising from . . . loss of wages, loss of future earnings . . . or other objectively verifiable monetary losses." MCL 600.2945(c). "All actions and claims survive death." MCL 600.2921. The wrongful-death act, MCL 600.2922, provides that the personal representative of the estate of the deceased may bring an action against the defendant that the decedent would have been entitled to bring if death had not ensued. MCL 600.2922(1) and (2). The decedent's survivors were thus eligible to recover damages for her wrongful death. MCL 600.2922(3)(a). The statute provides for recovery of damages as follows:

> In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. [MCL 600.2922(6).]

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs*, 485 Mich at 76. To determine legislative intent, a reviewing court must examine the statute's plain language. *Klooster v Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed, the statute must be enforced as written, and further judicial construction is not permitted. *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013); *Briggs*, 485 Mich at 76. "Statutory provisions that relate to the same subject are *in pari materia* and should be construed harmoniously to avoid conflict." *Kazor v Dep't of Licensing & Regulatory Affairs, Bureau of Prof Licensing*, 327 Mich App 420, 427; 934 NW2d 54 (2019).

The Paul defendants acknowledge that this Court's decision in *Denney v Kent Co Rd Comm*, 317 Mich App 727; 896 NW2d 808 (2016), supports plaintiff's recovery of damages for the decedent's wage loss, but argue that *Denney* was wrongly decided. We disagree. In *Denney*, the plaintiff brought a wrongful-death action against the county road commission. The commission moved for partial summary disposition on the ground that the governmental immunity exception for public roads did not allow the plaintiff to recover damages other than for the decedent's bodily injury and loss of financial support. The plaintiff argued that recovery of damages for lost wages and loss of earning capacity was within the scope of the highway exception to governmental immunity. *Id*. at 729. The trial court granted the commission's motion.

This Court reversed. In doing so, we noted that lost earnings were not specifically included in MCL 600.2922(6), but stated that the word "including" as used in this provision indicated " 'an intent by the Legislature to permit the award of any type of damages, economic and noneconomic, deemed justified by the facts of the particular case.' " *Denney*, 317 Mich App at 731, quoting *Thorn v Mercy Mem Hosp Corp* 281 Mich App 644, 651; 896 MW2d 808 (2016). This Court stated that the wrongful-death act " 'neither limits nor precludes the type of damages that could have been recovered by the person had the person survived the injury.' " *Denney*, 317 Mich App

at 731, quoting *Thorn*, 281 Mich App at 660. Accordingly, damages available under MCL 600.2922(6) included " 'any type of damages, economic and noneconomic, deemed justified by the facts of the particular case.' " *Denney*, 317 Mich App at 731, quoting *Thorn*, 281 Mich App at 651. Economic damages include " 'damages incurred due to the loss of the ability to work and earn money . . . .'[;] [t]herefore, damages for lost earnings are allowed under the wrongful-death statute." *Denney*, 317 Mich App at 732, quoting *Hannay v Dep't of Transp*, 497 Mich 45, 67; 860 NW2d 67 (2014). This Court concluded that the governmental tort liability act allowed recovery for economic loss caused by bodily injury, which included lost earnings. Because the decedent could have recovered lost earnings in his own suit if he had survived, lost earnings were recoverable by his estate in the wrongful-death action. *Id*. at 732-735.

It is clear from *Denney* that the wrongful-death act permits the decedent's estate to recover the same damages that would have been available to the decedent if the injury had not resulted in the decedent's death, including damages for lost wages if they would have otherwise been available. The wrongful-death act neither expands nor restricts the categories of damages available in the underlying action. Although the Paul defendants argue that this Court should reject *Denney*, this Court "must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCL 7.215(J)(1). In any event, *Denney*'s interpretation of MCL 600.2922(6) is based on the sound statutory analysis that the word "including" broadly permits recovery of all types of damages "deemed justified by the facts of the particular case." *Denney*, 317 Mich App at 731 (citation omitted). The trial court did not err by declining to hold that wage-loss damages were not available as a matter of law.

The Paul defendants also argue that the trial court erred by denying their motion for JNOV, because even if a wage-loss claim was not barred as a matter of law, the evidence did not support plaintiff's claim in this case. We disagree. "A motion for JNOV should be granted only when there was insufficient evidence presented to create an issue for the jury." *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 612; 563 NW2d 693 (1997). The reviewing court must "view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the facts presented preclude judgment for the nonmoving party as a matter of law." *Id*.

The Paul defendants argue that the evidence did not factually support plaintiff's wage-loss claim because plaintiff was unemployed at the time of her death, and her counseling records indicated that her disability was not improving and would not be able to return to her employment. We disagree. The counseling records do not state, or conclusively prove, that the decedent never planned to return to work, or that her psychological illness was worsening instead of improving. Her disability was principally related to her grief and anxiety over her young daughter's death and by marital discord, neither of which is necessarily a permanent condition. Jurors are permitted to weigh the evidence in view of their common knowledge or experience. *People v Bailey*, 310 Mich App 703, 722; 873 NW2d 855 (2015). The jury could infer from common knowledge and life experience that a person emotionally affected by a tragic loss may recover adequately, with time, and be able to resume employment and other basic activities. Viewing the evidence and all reasonable inferences in the light most favorable to plaintiff, *Pontiac Sch Dist*, 221 Mich App at

612, the trial court did not err by denying the Paul defendants' motion for JNOV with respect to wage-loss damages.[5]

## V. CONCLUSION

The trial court did not err by failing to instruct the jury regarding the reason for McLaren's absence from the case. The court also did not err by permitting plaintiff to recover economic damages for the decedent's wage loss, and it did not err by denying the Paul defendants' motion for JNOV with respect to whether the evidence factually supported an award of damages for the decedent's wage loss. The Paul defendants lack standing to challenge the trial court's decision to direct a verdict in favor of McLaren. Accordingly, we affirm the judgment for plaintiff against the Paul defendants. In light of this outcome, it is unnecessary to consider the issues raised in plaintiff's cross-appeal.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

---

[5] In his cross-appeal, plaintiff challenges the trial court's limitation of future wage losses to six years; however, this argument is also contingent on this Court reversing the trial court's judgment in some respect, as plaintiff states that "[i]f the Court affirms Plaintiff's Judgment against Dr. Paul and PHN, then Plaintiff will accept that outcome without pressing his own disagreements with the trial court rulings." Because the contingency has not come to pass, we again decline to address plaintiff's argument on this issue.